1                                                    The Honorable Robert S. Lasnik

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
9                                      AT SEATTLE

JOHN HENRY BROWNE and ALAN J.            )
10   WENOKUR, individually and on behalf of   )   No. CV7-920 RSL
     others similarly situated,               )
11                                            )
                          Plaintiffs,         )   DEFENDANTS' MOTION TO
12                                            )   DISMISS CLASS ACTION
            v.                                )   COMPLAINT UNDER FED. R.
13                                            )   CIV. P. 12(c)
     AVVO, INC., MARK BRITTON, and JOHN       )
14   DOES 1-25,                               )   **Note on Motion Calendar:**
                                              )   **July 20, 2007**
15                        Defendants.         )
                                              )
16   _____   )

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — 1
SEA 2044802v3 0084269-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2600 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Dockets.Justia.com

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    FACTUAL BACKGROUND......................................................................................1

   A.   Avvo's Launch...............................................................................................1

   B.   The Avvo Rating.............................................................................................2

   C.   What Avvo Purports to Offer...........................................................................4

   D.   The Complaint. ..............................................................................................4

III.   LEGAL ARGUMENT..............................................................................................5

   A.   Because They Seek to Punish Speech, Plaintiffs Face a Heightened Pleading
        Standard Under the First Amendment. ............................................................5

   B.   Avvo Engages in a Core First Amendment Activity—Opinion. ........................7

   C.   The First Amendment Precludes the Unlimited Liability that Plaintiffs Seek
        Against Avvo. ...............................................................................................13

   D.   Plaintiffs Have Failed to State a Claim Under the Washington Consumer
        Protection Act. .............................................................................................15

        1.   Avvo does not engage in "trade" or "commerce" under the CPA...........................15

        2.   Plaintiffs have failed to allege that Avvo proximately caused their alleged injuries.
             17

   E.   Section 230 of the Communications Decency Act Bars Liability for Avvo's
        Posting of Third-Party Content......................................................................19

   F.   The First Amendment Bars Liability for Republication of Disciplinary Actions by
        the Washington State Bar Association............................................................21

        1.   A publisher cannot be liable for reprinting truthful information from public records
             about a matter of public concern.....................................................................21

        2.   The fair report privilege also bars liability for publication of disciplinary history. .21

IV.    CONCLUSION......................................................................................................22

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2600 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

<u>**TABLE OF AUTHORITIES**</u>

3

CASES

4

*Agora, Inc. v. Axxess, Inc.,*
   90 F. Supp.2d 697 (D. Md.), *aff'd,* 11 Fed. Appx. 99 (4th Cir. 2001).....................................9

5

6

*Alpine Indus. Computers, Inc. v. Cowles Publ'g Co.,*
   114 Wn. App. 371, 57 P.3d 1178 (2002) .......................................................................... 21-23

7

*Anton v. St. Louis Suburban Newspapers, Inc.,*
   598 S.W.2d 493 (Mo. App. 1980) .........................................................................................11

8

9

*Asay v. Hallmark Cards, Inc.,*
   594 F.2d 692 (8th Cir. 1979) ...................................................................................................7

10

11

*Ass'n of Wash. Pub. Hosp. Dist. v. Philip Morris Inc.,*
   241 F.3d 696 (9th Cir. 2001) ................................................................................................17

12

*Aviation Charter, Inc. v. Aviation Research Group/US,*
   416 F.3d 864 (8th Cir. 2005) ........................................................................................ 9, 12-13

13

14

*Baker v. Los Angeles Herald Exam'r,*
   721 P.2d 87 (Cal. 1986) ...........................................................................................................9

15

16

*Bates v. State Bar of Arizona,*
   433 U.S. 350 (1977)...............................................................................................................12

17

*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) ...............................................................................................19

18

19

*Beinin v. Berk,*
   452 N.Y.S.2d 601 (N.Y. App.), *aff'd,* 444 N.E.2d 1005 (N.Y. 1982).....................................11

20

21

*Bell Atlantic Corp. v. Twombly,*
   127 S. Ct. 1955, 2007 WL 1461066 (U.S. May 21, 2007) ...............................................2, 6

22

*Bergen v. Martindale-Hubbell, Inc.,*
   285 S.E.2d 6 (Ga. 1981) .......................................................................................................12

23

24

*Blatty v. New York Times Co.,*
   42 Cal.3d 1033 (Cal. 1986)....................................................................................................13

25

26

*Blewett v. Abbott Labs.,*
   86 Wn. App. 782, 938 P.2d 842 (1997)................................................................................17

27

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — ii

SEA 2044802v3 0084269-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2600 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Bobal v. Rennselaer Polytechnic Inst.*,
    916 F.2d 759 (2d Cir. 1990) ......................................................................7

*Bramesco v. Drug Computer Consultants*,
    834 F. Supp. 120 (S.D.N.Y. 1993) ............................................................7

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) .......................................................................2

*Brooks v. Paige*,
    773 P.2d 1098 (Colo. 1988)......................................................................14

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ............................................................19-20

*Clapp v. Olympic View Publ'g Co.*,
    137 Wn. App. 470, 154 P.3d 230 (2007)..................................................21

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994) .......................................................................6

*Cochran v. NYP Holdings, Inc.*,
    58 F. Supp.2d 1113 (C.D. Cal.), *aff'd*, 210 F.3d 1036 (9th Cir. 2000)................................8, 10

*Coles v. Washington Free Weekly, Inc.*,
    881 F. Supp. 26 (D.D.C. 1995)................................................................11

*Cornwell v. Joseph*,
    7 F. Supp.2d 1106, 1108 (S.D. Cal. 1998)................................................6

*Cox Broad. Corp. v. Cohn*,
    420 U.S. 469 (1975)..................................................................................20

*Deupree v. Iliff*,
    860 F.2d 300 (9th Cir. 1988) ...................................................................14

*El Paso Times, Inc. v. Kerr*,
    706 S.W.2d 797  (Tex. App. 1986)...........................................................11

*Elite Funding Corp. v. Mid-Hudson Better Bus. Bureau*,
    165 Misc.2d 497 (N.Y. Sup. 1995)............................................................9

*Fair Hous. Council v. Roommates.com*,
    ___ F.3d ____, 2007 WL 1412650 (9th Cir. May 15, 2007)....................20

*Fed. Deposit Ins. Corp. v. Bathgate*,
    27 F.3d 850 (3rd Cir. 1994) .......................................................................7

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2600 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Ferlauto v. Hamsher*,
   74 Cal. App.4th 1394 (Cal. App. 1999)........................................................................12

*Fidelity Mortgage Corp. v. Seattle Times Co.*,
   131 Wn. App. 462, 128 P.3d 621 (2005)............................................................... 15-18

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*,
   12 F. Supp. 2d 1068 (C.D. Cal. 1998) .......................................................................14

*Florida Star v. B.J.F.*,
   491 U.S. 524 (1980)...................................................................................................21

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) .....................................................................................6

*Franchise Realty Interstate Corp. v. S.F. Local Joint Executive Bd. of Culinary
   Workers*,
   542 F.2d 1076 (9th Cir. 1976) .................................................................................. 6-7

*Galbraith v. County of Santa Clara*,
   307 F.3d 1119 (9th Cir. 2002) .....................................................................................2

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)...............................................................................................7, 22

*Golub v. Esquire Publ'g Inc.*,
   508 N.Y.S.2d 188 (N.Y. App. 1986) ..........................................................................11

*Graham v. Bryce Corp.*,
   348 F. Supp.2d 1038 (E.D. Ark. 2004).........................................................................7

*Guarneri v. Korea News, Inc.*,
   625 N.Y.S.2d 291 (N.Y. App. 1995) ..........................................................................11

*Hammer v. Amazon.com*,
   392 F. Supp.2d 423 (E.D.N.Y. 2005) ...........................................................................9

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wn.2d 778, 719 P.2d 531 (1986)........................................................................15

*Harris v. City of Seattle*,
   315 F. Supp. 2d 1112 (W.D. Wash. 2004)....................................................................6

*Herbert v. Lando*,
   603 F. Supp. 983 (S.D.N.Y. 1985), *aff'd in relevant part*, 781 F.2d 298 (2d Cir.
   1986) ...........................................................................................................................7

*Herron v. Tribune Publ'g. Co.*,
   108 Wn.2d 162, 736 P.2d 249 (1987)........................................................................21

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — iv

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2600 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Hoffman v. Capital Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 2001) ..................................................................15

*Hustler v. Falwell*,
    485 U.S. 46 (1988).................................................................................. 13-14

*Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    122 Wn. App. 736, 87 P.3d 774 (2004) ...................................................18

*Ireland v. Edwards*,
    584 N.W.2d 632 (Mich. App. 1998)..........................................................14

*James v. San Jose Mercury News*,
    17 Cal. App.4th 1 (Cal. App. 1993)..........................................................11

*Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.*,
    175 F.3d 848 (10th Cir. 1999) ...............................................................9, 14

*Kirkland v. City of Peekskill*,
    634 F. Supp. 950 (S.D.N.Y. 1986) .............................................................7

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ....................................................................2

*Lence v. Hagadone Inv. Co.*, 853 P.2d 1230 (Mont. 1993), *rev'd on other grounds*,
    *Sacco v. High Country Indep. Press, Inc.*,
    271 Mont. 209, 896 P.2d 411 (Mont. 1995) ...........................................21

*Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*,
    838 F.2d 1287 (D.C. Cir. 1988).......................................................... 11-12

*Lieberman v. Fieger*,
    338 F.3d 1076 (9th Cir. 2003) ....................................................................8

*Manns v. The Leather Shop, Inc.*,
    960 F. Supp. 925 (D.V.I. 1997) ..................................................................7

*Mark v. Seattle Times Co.*,
    96 Wn.2d 473, 635 P.2d 1081 (1981).......................................................22

*Mashburn v. Collin*,
    355 So.2d 879 (La. 1977) ............................................................................9

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ......................................................................6

*Mohr v. Grant*,
    153 Wn.2d 812, 108 P.3d 768 (2005).......................................................22

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — v

SEA 2044802v3 0084269-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2600 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Moldea v. New York Times Co.*,
    22 F.3d 310 (D.C. Cir. 1994) ........................................................ 8-9

*Morris v. Gray & Co.*,
    378 So.2d 1081 (La. 1979) ........................................................... 11

*Mr. Chow of New York v. Ste. Jour Azur S.A.*,
    759 F.2d 219 (2d Cir. 1985) ........................................................... 9

*Murray v. Bailey*,
    613 F. Supp. 1276 (N.D. Cal. 1985) ............................................. 10

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ...................................................................... 15

*North Star Int'l v. Arizona Corp. Comm'n*,
    720 F.2d 578 (9th Cir. 1983) ........................................................... 6

*Northwest Airlines, Inc. v. Ticket Exch., Inc.*,
    793 F. Supp. 976 (W.D. Wash. 1992) ............................................ 19

*O'Brien v. Tribune Publ'g Co.*,
    7 Wn. App. 107, 499 P.2d 24 (1972) ............................................ 22

*Oregon Natural Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991) ........................................................... 7

*Owen v. Carr*,
    497 N.E.2d 1145 (Ill. 1986) .......................................................... 10

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ........................................................... 2

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ..................................................... 8, 10

*Peel v. Attorney Registration and Disciplinary Comm'n of Ill.*,
    496 U.S. 91 (1991) ........................................................................ 12

*Pegasus v. Reno Newspapers, Inc.*,
    57 P.3d 82 (Nev. 2002) ................................................................... 9

*Phantom Touring, Inc. v. Affiliated Pub'lns*,
    953 F.2d 724 (1st Cir. 1992) ........................................................... 7

*Presidio Enter. v. Warner Bros. Distrib. Corp.*,
    784 F.2d 674 (5th Cir. 1986) ..................................................... 9, 14

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2600 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Quilici v. Second Amendment Found.*,
    769 F.2d 414 (7th Cir. 1985) ...................................................................................11

*Reader's Digest Ass'n v. Superior Court*,
    37 Cal.3d 244 (Cal. 1984)......................................................................................13

*Redco Corp. v. CBS, Inc.*,
    758 F.2d 970 (3d Cir. 1985) ...................................................................................14

*Remick v. Manfredy*,
    238 F.3d 248 (3d Cir. 2001) ...................................................................................10

*Reno v. ACLU*,
    521 U.S. 844 (1997)................................................................................................16

*Rice v. Comtek Mfg. of Or. Inc.*,
    766 F. Supp. 1539 (D. Or. 1990) ..............................................................................7

*S & W Seafoods Co. v. Jacor Broad. of Atlanta*,
    390 S.E.2d 228 (Ga. App. 1990)...............................................................................9

*Sharper v. Phila. Bar Ass'n*,
    42 Pa. D. & C.3d 550 (Pa. Com. Pl. 1986) ...............................................................9

*Shoen v. Shoen*,
    5 F.3d 1289 (9th Cir. 1993) ....................................................................................16

*Short v. Demopolis*,
    103 Wn.2d 52, 691 P.2d 163 (1984)........................................................................15

*Smith v. Daily Mail Publ'g Co.*,
    443 U.S. 97 (1979)..................................................................................................21

*Sorin v. Bd. of Educ. of City School Dist. of Warrensville Heights*,
    464 F. Supp. 50 (N.D. Ohio 1978)............................................................................7

*Stuart v. Gambling Times, Inc.*,
    534 F. Supp. 170 (D.N.J. 1982) ................................................................................9

*Sullivan v. Conway*,
    157 F.3d 1092 (7th Cir. 1998) .................................................................................11

*Themed Restaur., Inc. v. Zagat Survey*, LLC, 801 N.Y.S.2d 38 (N.Y. App. 2005) ......................9

*Thomas v. Los Angeles Times Communications, LLC*,
    189 F. Supp.2d 1005 (C.D. Cal. 2002), *aff'd on other grounds*, 45 Fed. Appx. 801
    (9th Cir. 2002)..........................................................................................................9

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — vii

SEA 2044802v3 0084269-000001

*Trump v. Chicago Tribune Co.,*
   616 F. Supp. 1434 (S.D.N.Y. 1985) ..................................................................9

*U.S. ex rel. Smith v. Yale Univ.,*
   415 F. Supp.2d 58 (D. Conn. 2006) ................................................................7

*Unelko Corp. v. Rooney,*
   912 F.2d 1049 (9th Cir. 1990) .....................................................................14

*Vantassell-Matin v. Nelson,*
   741 F. Supp. 698 (N.D. Ill. 1990) ................................................................7

*Vasquez v. Los Angeles County,*
   __ F.3d __, No. 04-56973, 2007 WL 1412671 (9th Cir. May 15, 2007)..................6

*Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.,*
   122 Wn.2d 299, 858 P.2d 1054 (1993).........................................................19

*Washington Post Co. v. Keogh,*
   365 F.2d 965 (D.C. Cir. 1966) ....................................................................22

*Whitney v. California,*
   274 U.S. 357 (1927)..................................................................................22

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
   471 U.S. 626 (1985)..................................................................................12

*Zeran v. America Online, Inc.,*
   129 F.3d 327 (4th Cir. 1997) ................................................................19-20

**STATUTES**

47 U.S.C. § 230.....................................................................................19-20

RCW 19.86.010(2)....................................................................................15

RCW 19.86.020 ...................................................................................14-15

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE (2d ed.
   1990) ....................................................................................................2

Fed. R. Civ. P. 12(b)(6) ................................................................................6

Fed. R. Civ. P. 12(c) ...............................................................................2, 5-6

H.B. 1366, 2007 Leg., 60th Sess. (Wa. 2007) .................................................16

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — viii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2600 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

U.S. Const., Amend. I ................................................................................................ Passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — ix

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2600 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## I.    PRELIMINARY STATEMENT

Plaintiff John Henry Browne says he has been honored in "The Best Lawyers in America."  Compl. ¶ 20.  He also alleges that *Washington Law and Politics* magazine has recognized him as one of Washington's "Super Lawyers."  *Id.*  His co-plaintiff, Alan J. Wenokur, is no slouch either: like Mr. Browne, he has earned the coveted Martindale-Hubbell "AV" rating.  *Id.* ¶¶ 20, 25.

But if these gifted attorneys have their way, nobody would be permitted to judge them or to question their skills further.  In particular, Messrs. Browne and Wenokur object that defendant Avvo, Inc., and an Avvo employee, defendant Mark Britton, have launched a website that collects data and then opines on the qualifications of many of America's lawyers.  Plaintiffs have not pointed to any false and defamatory statements of fact on the Avvo site.  Instead, their dismay appears to result from ratings lower than they think they deserve—in Mr. Browne's case, due to a recent disciplinary admonition, and in Mr. Wenokur's case, because he refuses to fill out a form on the site.

Messrs. Browne and Wenokur are not the first lawyers to object to a public expression of opinion about their work.  In fact, other disgruntled lawyers have filed similar lawsuits in the past, which have bequeathed a rich legacy of First Amendment opinion cases emphasizing the right of the media and the public to evaluate, comment upon, and even criticize, lawyers.  These cases uniformly find that the Constitution does ***not*** exempt lawyers from opinions and evaluations.  In this motion, defendants ask the Court to recognize that the First Amendment bars lawsuits chilling free speech, even those brought by lawyers who consider themselves superlative and above criticism, and to dismiss the Complaint with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Avvo's Launch

On June 5, 2007, Avvo launched the initial version of its website, offering consumers ratings and profiles of attorneys in nine states and the District of Columbia.  Compl. ¶¶ 1, 2, 32.  Developed for non-experts, Avvo aims to "make the murky process of comparing lawyers

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

clearer." *Id.* ¶ 2.[1]  Avvo rates attorneys in three basic areas: experience, industry recognition, and professional conduct.  *Id.* ¶ 4.

To do this, Avvo compiles several pieces of information.  ***First***, Avvo gathers and displays publicly available material about attorneys from state bar associations and websites—including years of experience and disciplinary sanctions.  Declaration of Karen Shaak, Ex. A. at 1.  ***Second***, attorneys may update their profiles with relevant information at no cost, entering their credit card information solely to safeguard the website against fraudulent activity (e.g., hackers attempting to claim multiple profiles).  *See id.* at 2, 5.  ***Third***, consumers can submit ratings and reviews of attorneys they have worked with, and attorneys may submit endorsements of their peers.  *Id.* at 1.

## B.    The Avvo Rating

Based on extensive research, legal expertise, attorney opinions, and consumer input, Avvo arrived at the view that some lawyer attributes matter more than others.  *Id.* at 11.  Pushed by a desire to share these beliefs with consumers, Avvo developed a mathematical model that incorporates the gathered information and converts it into a numerical rating based

---

[1] This quotation, like much material the Complaint cites, relies on information from the Avvo website.  *See, e.g.,* Compl. ¶¶ 1-7, 10-13, 15, 21-23, 26-27, 32-35, 37-40, 46-49, 50-56, 60, 70-71, 79, 82-84.  Under the incorporation-by-reference doctrine, the Court may consider the full text of the website.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."); *see also Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (citing 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1327, at 762-63 (2d ed. 1990)), *rev'd on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  "The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material.  Just as a reader must absorb a printed statement in the context of the media in which it appears, a computer user necessarily views web pages in the context of the links through which the user accessed those pages." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  Last month, the Supreme Court applied this principle on a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 2007 WL 1461066, at *13, n.13 (U.S. May 21, 2007) ("[T]he District Court was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn.").  Given that plaintiffs' lawsuit is premised on the Avvo website itself, consideration of its contents does not convert this motion into one for summary judgment.  *Parrino*, 146 F.3d at 705-06; see also *Branch*, 14 F.3d at 454.  Finally, to the extent this Court considers information outside the pleadings, this Court has the option to treat this motion for judgment on the pleadings as a motion for summary judgment in accordance with Fed. R. Civ. P. 12(c).  *See, e.g., Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 922 (9th Cir. 2004).

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 2

SEA 2044802v3 0084269-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

on a ten-point scale. *Id.*; *see also* Compl. ¶ 5. The rating represents Avvo's "assessment of how well a lawyer could handle [a consumer's] legal issue." *Id.*; *see also* Compl. ¶ 5. These numbers correspond to Avvo's judgment as follows:

- • 9.0-10.0 Superb
- • 8.0-8.9 Excellent
- • 7.0-7.9 Very good
- • 6.0-6.9 Good
- • 5.0-5.9 Average
- • 4.0-4.9 Concern
- • 3.0-3.9 Caution
- • 2.0-2.9 Strong caution
- • 1.0-1.9 Extreme caution.

*Id.* at 12; *see also* Compl. ¶ 3. Lawyers may not change their Avvo ratings without submitting information relevant to the factors considered in the mathematical model. *See id.* at 13. They may not pay to increase their rating. *Id.*

Avvo assumes that lawyers honestly report information relevant to their experience. *Id.* at 14. Nevertheless, when Avvo's system does not recognize an award or recognition an attorney posts to his or her profile, it assigns the lawyer certain minimum points for the "unknown" award or recognition and forwards the "unknown" information to an internal assessment team for review. *Id.* The team reviews the award or recognition and assigns a value according to Avvo's scoring guidelines. *Id.* Ratings also may change when Avvo updates information it collects from publicly available records. *See id.* at 13. Avvo may lower an attorney's rating for submitting false data, and encourages users to report potentially false information. *Id.* In addition, an attorney's Avvo rating may change as Avvo periodically adjusts the model it uses. *Id.*[2]

---

[2] In fact, Avvo has already begun changes to its beta version. On June 26, 2007, the site debuted a new system that applies to attorneys for whom Avvo has information only from public records. In these situations, Avvo no longer assigns the attorney a numerical rating and

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### C.  What Avvo Purports to Offer

Avvo's website is filled with reminders that its ratings simply represent its opinion of the subject attorneys.  *Id.* at 11-12 ("The Avvo Rating is **our assessment** of how well a lawyer could handle your legal issue….  The Avvo Rating is **one of several tools** you should use to choose the right lawyer for your case…. Keep in mind that the Avvo Rating is based on information we have collected about a lawyer, not personal experience, so it can't measure subjective factors like personality and communication style. The fact is, there's no substitute for talking and meeting with an attorney in person.") (emphasis added); 3 (Avvo offers "unique information and guidance in the form of our Avvo Rating, **which is our assessment of how well a lawyer can represent you**, as well as disciplinary histories, client ratings and peer ratings for every lawyer in the states that we currently cover.") (emphasis added); 19 ("**The Avvo Rating is our assessment** of how well a lawyer could handle your legal issue.  It is based on data we collected about the lawyer, including the attorney's experience practicing law, professional achievements and disciplinary sanctions (if any).") (emphasis added); 17 ("We're **an excellent place to start** because we've profiled every lawyer in your state. Profile information includes experience, areas of practice, professional achievements, disciplinary sanctions (if any), and the Avvo Rating, **our assessment** of how well a lawyer could represent you based on information we know about the lawyer.") (emphasis added); 20 ("**Should I rely on only the Avvo Rating in choosing a lawyer?  No**. While the Avvo Rating is well-informed by our extensive research and legal expertise, **it is only one of several tools** you can use to choose the right lawyer for your case.") (emphasis added); *see also* Compl. ¶¶ 5, 33-34, 39.

### D.  The Complaint.

On June 14, 2007, two Seattle lawyers, Browne and Wenokur, individually and purportedly on behalf of other lawyers similarly situated, filed this Class Action Complaint. Plaintiffs disagree with Avvo's views about their expertise and seek to penalize Avvo for communicating its views, alleging that Avvo distributes misleading information because it

---

alerts the consumer if the attorney has something in his or her record that Avvo believes the consumer should consider, such as a suspended license.

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 4

SEA 2044802v3 0084269-000001

fails to accurately reflect their experience, disciplinary proceedings and "meaningful benchmarks of performance." *Id.* ¶ 16. They also contend (without offering any facts) that Avvo's ratings are "capricious and arbitrary." *Id.* ¶ 46.

The lawsuit turns on two basic disagreements. First, Mr. Browne has been subject to a disciplinary proceeding brought by the Washington State Bar Association, which he claims does not justify his rating of 5.2 ("Average"). Compl. ¶ 23. Second, Mr. Wenokur has a rating of 6.5 ("Good") because he has not claimed his profile, which would have allowed him to add information that would aid Avvo in judging his qualifications. *Id.* ¶ 25.

As a result of Avvo's use and promotion of the rating system as an "'unbiased' method to 'find the right lawyer,'" plaintiffs contend, Avvo has violated the Washington Consumer Protection Act ("CPA"). *Id.* ¶ 70-71. They also allege (again, in conclusory fashion) that Avvo purports to be objective but is subject to manipulation, cannot produce a reliable system, contains inherent inconsistencies, publicly penalizes lawyers who will not register, falsely purports to be free of favoritism, does not provide a reliable benchmark for assessing lawyer competence, encourages consumer trust in a fallible system, does not discriminate between low ratings based on whether information is available, allows attorneys to manipulate their ratings, promotes qualities of attorneys in violation of the Rules of Professional Conduct, and does not accurately report in the categories where it purports to do so. *Id.* ¶ 71. As a result, they assert that Avvo has damaged the reputation and good will associated with their legal practices. *Id.* ¶ 14. Mr. Browne seeks to bring a complaint on behalf of himself based on essentially the same allegations and claims the website has cost him two clients. *Id.* ¶¶ 76-85.

### III.    LEGAL ARGUMENT

**A.    Because They Seek to Punish Speech, Plaintiffs Face a Heightened Pleading Standard Under the First Amendment.**

A court should decide a motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P., under the same standard as a motion for failure to state a claim upon which relief

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 5
SEA 2044802v3 0084269-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

can be granted under Rule 12(b)(6).  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810

(9th Cir. 1988) (because "Rule 12(c) was used to raise the defense of failure to state a claim…

the motion for judgment on the pleadings faces the same test as a motion under Rule

12(b)(6)"); *accord Cornwell v. Joseph*, 7 F. Supp.2d 1106, 1108 (S.D. Cal. 1998) (same).

A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency, a test

that (notwithstanding their excellent non-Avvo ratings) plaintiffs have failed to meet.  *See*

*North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) (affirming

dismissal).  Although the Court must accept as true the Complaint's well-pleaded factual

allegations, the Ninth Circuit has "consistently emphasized… that conclusory allegations of

law and unwarranted inferences will not defeat an otherwise proper motion to dismiss."

*Vasquez v. Los Angeles County*, __ F.3d __, No. 04-56973, 2007 WL 1412671, at *2 (9th Cir.

May 15, 2007) (affirming dismissal) (citation omitted).  "[T]he court is not required to accept

legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably

be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55

(9th Cir. 1994).  The Supreme Court recently made clear that "a plaintiff's obligation to

provide the grounds of his entitle[ment] to relief requires more than labels and conclusions,

and a formulaic recitation of a cause of action's elements will not do."  *Bell Atlantic Corp. v.*

*Twombly*, 127 S. Ct. 1955, 2007 WL 1461066, at *8 (U.S. May 21, 2007) (quotation marks

omitted).

Moreover, this lawsuit directly implicates the First Amendment.  "Where a plaintiff

seeks damages… for conduct which is *prima facie* protected by the First Amendment, the

danger that the mere pendency of the action will chill the exercise of First Amendment rights

requires more specific allegations than would otherwise be required."  *Flowers v. Carville*,

310 F.3d 1118, 1130 (9th Cir. 2002) (quoting *Franchise Realty Interstate Corp. v. S.F. Local*

*Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Cir. 1976)); *see also*

*Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1123-24 (W.D. Wash. 2004) (dismissing a

plaintiff's defamation claim for failure to identify the allegedly defamatory statements, and to

1  allege that the statements were made about her). Many courts have confirmed this heightened

2  standard, finding that defamation plaintiffs must allege with specificity the elements of their

3  claims, for example by identifying the allegedly libelous statements.[3] In other contexts, too,

4  these First Amendment rules have spurred the Ninth Circuit to require plaintiffs to meet

5  additional specificity requirements to survive a motion to dismiss.[4]

6  **B.    Avvo Engages in a Core First Amendment Activity—Opinion.**

7  The Avvo Rating is an opinion. As the United States Supreme Court emphasized long

8  ago: "Under the First Amendment, *there is no such thing as a false idea*." *Gertz v. Robert*

9  *Welch, Inc.,* 418 U.S. 323, 339 (1974) (emphasis added). "However pernicious an opinion

10  may seem," the Court continued, "we depend for its correction not on the conscience of

11  judges and juries but on the competition of other ideas." *Id.* Plaintiffs ask this Court to do

12  precisely the opposite, by passing judgment on Avvo's ratings, which consist of Avvo's (and

13

14  [3] *See Fed. Deposit Ins. Corp. v. Bathgate,* 27 F.3d 850, 875 (3rd Cir. 1994) (dismissal was
appropriate where party claiming defamation failed to identify allegedly libelous statements);

15  *Phantom Touring, Inc. v. Affiliated Pub'lns,* 953 F.2d 724, 728 n.6 (1st Cir. 1992) (party sued
"is entitled to knowledge of the precise language challenged as defamatory, and the plaintiff

16  therefore is limited to its complaint in defining the scope of the alleged defamation"); *Bobal v.*
*Rennselaer Polytechnic Inst.*, 916 F.2d 759, 763 (2d Cir. 1990) (district court properly
dismissed defamation claims where plaintiff failed "to plead adequately the actual words

17  spoken, publication or special damages"); *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698-
99 (8th Cir. 1979); *U.S. ex rel. Smith v. Yale Univ.,* 415 F. Supp.2d 58, 108-09 (D. Conn.

18  2006) (dismissing defamation complaint for failure to allege with sufficient specificity);
*Graham v. Bryce Corp.,* 348 F. Supp.2d 1038, 1043 (E.D. Ark. 2004) (same); *Manns v. The*

19  *Leather Shop, Inc.*, 960 F. Supp. 925, 929 (D.V.I. 1997) ("The plaintiff thus failed to give the
defendant adequate notice of what she must defend against."); *Bramesco v. Drug Computer*

20  *Consultants*, 834 F. Supp. 120, 122 (S.D.N.Y. 1993) (defamation allegations "so bereft of
factual content" that court denied request to replead); *Rice v. Comtek Mfg. of Or. Inc.*, 766 F.

21  Supp. 1539, 1541-42 (D. Or. 1990) (plaintiff's defamation claim dismissed where "vague
pleading ke[pt] defendants from identifying constitutional or other privileges that may be

22  available to them"); *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 707 (N.D. Ill. 1990)
(Plaintiff alleging defamation must "recite the precise language alleged to be defamatory. In

23  the absence of such specific allegations, dismissal of a complaint is appropriate"); *Kirkland v.*
*City of Peekskill*, 634 F. Supp. 950, 953 (S.D.N.Y. 1986) (same); *Herbert v. Lando*, 603 F.

24  Supp. 983, 990-91 (S.D.N.Y. 1985) (same), *aff'd in relevant part*, 781 F.2d 298 (2d Cir.
1986); *Sorin v. Bd. of Educ. of City School Dist. of Warrensville Heights*, 464 F. Supp. 50, 53

25  (N.D. Ohio 1978) (same).

26  [4] For example, those seeking to challenge an individual's First Amendment petition rights
face heightened pleading requirements. *See Oregon Natural Res. Council v. Mohla*, 944 F.2d

27  531, 533 (9th Cir. 1991); *Franchise Realty Interstate Corp. v. S.F. Local Joint Executive Bd.*
*of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Cir. 1976).

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — 7

SEA 2044802v3 0084269-000001

others') opinions of attorney qualifications, and holding Avvo liable merely for publishing these opinions.

In examining whether any statement constitutes constitutionally protected opinion, the Ninth Circuit examines first "whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995); *accord Lieberman v. Fieger*, 338 F.3d 1076, 1079 (9th Cir. 2003) (attorney's statements that expert psychiatrist was a "terrible witness disliked by the jury" were protected opinions). In making this analysis, the court must examine the totality of the circumstances in which the statement was made, engaging in a three-part inquiry: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Partington*, 56 F.3d at 1153.

Here, the "general tenor" of the website undisputedly confirms that Avvo does not assert its ratings are objective facts:

***First***, the Avvo site states many times that Avvo's ratings represent the company's own assessments of attorneys' qualifications, and plaintiffs admit as much. *See II.C, supra*; *see also* Compl. ¶ 39 ( "[t]he Avvo rating… reflects Avvo's **judgment** based on the available information") (emphasis in original). For example, when a consumer clicks on one of four main tabs, "How It Works," he or she is directed to a page that contains the following language: "***[T]he Avvo Rating is our assessment of how well the lawyer could handle your legal issue***." Shaak Decl., ¶ 2, Ex. A at 11. (emphasis added).

***Second***, readers normally do not expect to find assertions of objective fact in ratings and reviews. *See, e.g., Cochran v. NYP Holdings, Inc.*, 58 F. Supp.2d 1113, 1125 (C.D. Cal.), ("The audience… would reasonably expect the alleged defamatory statement to constitute… opinion."), *aff'd*, 210 F.3d 1036 (9th Cir. 2000); *Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994) (rejecting a defamation claim that plaintiff engaged in "sloppy

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 8
SEA 2044802v3 0084269-000001

journalism" where "[t]he challenged statements were evaluations of a literary work which appeared in a forum in which readers expect to find such evaluations.").[5]  Average consumers do not rely on film reviews, restaurant ratings, and literary criticism to present facts—rather, they rely on such material for subjective interpretations of fact.  Similarly, those who visit Avvo would not assume that Avvo's opinions represent the objective "Truth" about attorney

---

[5] The cases uniformly classify reviews and ratings as protected opinion.  *See Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 871 (8th Cir. 2005) (assessment by publisher of air charter safety ratings that company had unfavorable safety record was not sufficiently factual to be provably false); *Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 855-56 (10th Cir. 1999) (bond rating agency's reporting of "negative outlook" on school district's general obligation bonds was protected opinion); *Presidio Enter. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986) (statement by producer that film would be a "blockbuster" not actionable under a state consumer protection statute, noting "opinions and beliefs reside in an inner sphere of human personality and subjectivity that lies beyond the reach of the law and is not subject to its sanctions"); *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219 (2d Cir. 1985) (allegedly libelous statements in review were protected opinion); *Hammer v. Amazon.com*, 392 F. Supp.2d 423, 430-31 (E.D.N.Y. 2005) (bookseller's failure to remove consumer reviews of plaintiff author's books from its website lawful); *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp.2d 697, 703 (D. Md.) (rating of financial news letter as "unpaid promoter" was opinion based on clearly disclosed facts), *aff'd*, 11 Fed. Appx. 99 (4th Cir. 2001); *Thomas v. Los Angeles Times Communications, LLC*, 189 F. Supp.2d 1005, 1015-16 (C.D. Cal. 2002) (statements in feature article questioning factual basis of book were protected opinion), *aff'd on other grounds*, 45 Fed. Appx. 801, 803 (9th Cir. 2002); *Trump v. Chicago Tribune Co.*, 616 F. Supp. 1434, 1435-36 (S.D.N.Y. 1985) (finding commentary by architecture critic absolutely privileged, noting "one's opinion of another, however unreasonable or vituperative, since [it] cannot be subjected to the test of truth or falsity… [is] entitled to absolute immunity from liability") (citations omitted); *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82 (Nev. 2002) (finding statements in restaurant review to be privileged); *Stuart v. Gambling Times, Inc.*, 534 F. Supp. 170, 172 (D.N.J. 1982) (statement that plaintiff's book was "the #1 fraud ever perpetrated upon the gambling reader" was protected opinion); *Baker v. Los Angeles Herald Exam'r*, 721 P.2d 87 (Cal. 1986) (statements by television critic criticizing sex education documentary film were protected opinions); *Mashburn v. Collin*, 355 So.2d 879, 888-89 (La. 1977) (critical review of restaurant was protected opinion); *Themed Restaur., Inc. v. Zagat Survey*, LLC, 801 N.Y.S.2d 38, 39-40 (N.Y. App. 2005) (allegedly libelous statement by defendant ascribing restaurant nine out of possible 30 points was protected opinion); *S & W Seafoods Co. v. Jacor Broad. of Atlanta*, 390 S.E.2d 228, 230 (Ga. App. 1990) (noting as to restaurant review, "[t]he expression of opinion on matters with respect to which reasonable men might entertain differing opinions is not libelous") (quotation marks and citation omitted); *Elite Funding Corp. v. Mid-Hudson Better Bus. Bureau*, 165 Misc.2d 497, 502 (N.Y. Sup. 1995) (statement that brokerage had "unsatisfactory record" was opinion based upon stated facts and not actionable); *Sharper v. Phila. Bar Ass'n*, 42 Pa. D. & C.3d 550, 553-54 (Pa. Com. Pl. 1986) (dismissing libel claim based on rating of judicial candidate by bar association as "Not Qualified for Failure to File with the Judicial Commission" because comment "necessarily involves the use of subjective criteria indicating that the statement is an opinion").

---

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 9

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    qualifications, particularly because Avvo uses subjective descriptive terms, such as "Caution"

2    or "Superb," to describe the meanings of the various numerical ratings.

3        ***Third***, Avvo has "outline[d] the factual basis for [its] conclusion," meaning that its

4    opinion merits absolute First Amendment protection.  *Partington*, 56 F.3d at 1153*; accord*

5    *Cochran*, 58 F. Supp.2d at 1122.  Avvo discloses that its assessments are based on

6    information contained in publicly available records, including years of experience,

7    disciplinary sanctions, and professional achievements, as well as attorney websites and

8    information attorneys provide to Avvo.  *See* Shaak Decl., ¶ 2, Ex. A. at 11, 19-20.  Indeed,

9    although Mr. Browne purports to be upset at his "average" Avvo rating—one he suggests "no

10   expert, lawyer or judge" would find—his anger is based on Avvo's opinion that his WSBA

11   disciplinary admonition, the truth of which he ***does not dispute***, contributed to the low rating.

12   *See, e.g.,* Compl. ¶ 5.  The fact that Avvo disclosed the factual basis for its low opinion of Mr.

13   Browne's abilities strengthens Avvo's First Amendment argument.  As in *Cochran*,

14   "[b]ecause the factual referent is disclosed, readers will understand they are getting [Avvo's]

15   interpretation of the facts presented." *Cochran*, 58 F. Supp.2d at 1123.

16       Under the third *Partington* factor, plaintiffs cannot offer any statements by Avvo in its

17   evaluations of "how well a lawyer could represent you" that are susceptible of being proven

18   true or false.  Many courts have found ratings and reviews are the classic context for opinions.

19   Many more courts have found that statements about the ability of professionals, and attorneys

20   in particular, constitute opinions which present "no core of objective evidence" for

21   verification.  *Id.* at 1125; *see, e.g., Partington,* 56 F.3d  at 1159 ("[C]ourts should be reluctant

22   to hold comments concerning the professional abilities of an individual actionable").[6]  As the

23   Ninth Circuit reasoned in *Partington*:

24   ────────────

25   [6]*See Remick v. Manfredy*, 238 F.3d 248, 260-63 (3d Cir. 2001) (statement by lawyer in letter
     to another lawyer that he was attempting to extort money was protected opinion because use
     of term "extort" is "non-defamatory, rhetorical hyperbole, a vigorous epithet" written in the

26   "context of two lawyers taking diametrically opposed legal positions") (quotation marks and
     citation omitted); *Murray v. Bailey*, 613 F. Supp. 1276, 1282 (N.D. Cal. 1985) (statement that
     "had [attorney] done his legal homework correctly, he probably wouldn't have tried that

27   particular strategy" was protected opinion); *Owen v. Carr*, 497 N.E.2d 1145, 1146 (Ill. 1986)

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Opinions vary significantly concerning what skills make a good trial lawyer and whether a particular individual possesses them. ***There is no objective standard by which one can measure an advocate's abilities with any certitude or determine conclusively the truth or falsity of statements made regarding the quality of his or her performance.*** Moreover, as the Supreme Court has noted, there is a wide variation in opinion concerning the appropriate trial strategy that should be pursued in a given circumstance: in the words of the Court, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client the same way.

*Id.* at 1157-58 (citation omitted) (emphasis added); *see also Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir. 1998) (statement that plaintiff "is a very poor lawyer" was protected opinion, because it "would be unmanageable to ask a court… to determine whether 'in fact' [plaintiff] is a very poor lawyer"); *Quilici v. Second Amendment Found.*, 769 F.2d 414, 420 (7th Cir. 1985) (statements that attorney's "presentation before [the] court was poor, and may have 'sunk' the appeal"; that he "did not cooperate with other attorneys arguing on his side" of the case; that he "used more time for oral argument than had been allocated to him and, as a result, used up all of the rebuttal time"; and that his "presentation was 'rambling and often pointless'" were protected opinion); *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d

---

(statement that attorney "did not file his complaint in the interest of justice, but instead was trying deliberately to intimidate [a judge] and other judges in future cases involving [his client]" was protected opinion); *Morris v. Gray & Co.*, 378 So.2d 1081, 1083 (La. 1979) (statements that attorney "refuse[d] to cooperate [with opposing counsel]" and was "merely intent on building [his] client's claim to the best of [his] ability" were protected opinion); *Guarneri v. Korea News, Inc.*, 625 N.Y.S.2d 291, 292 (N.Y. App. 1995) (statement that attorney "was considered by various sources… to have been unprepared and negligent, and that he lost an opportunity to appeal despite having been granted two extensions to do so" was protected opinion); *James v. San Jose Mercury News*, 17 Cal. App.4th 1, 14-15 (Cal. App. 1993) (statements that plaintiff, a deputy public defender, "apparently" violated law in obtaining child's school records and that his tactics were "common and sleazy" were protected opinion); *El Paso Times, Inc. v. Kerr*, 706 S.W.2d 797, 800 (Tex. App. 1986) (statement criticizing government attorney's conduct during criminal trial to the effect that "the burden [to prove guilt] is no excuse for cheating" was protected opinion); *Golub v. Esquire Publ'g Inc.*, 508 N.Y.S.2d 188, 190 (N.Y. App. 1986) (statement that plaintiff was a "loose-tongued lawyer" who "revealed his innermost secrets" was protected opinion); *Beinin v. Berk*, 452 N.Y.S.2d 601, 601-02 (N.Y. App.) (statements that attorney "is no good as a lawyer," that he "is not handling [the case] right, and that he "is not putting … much effort into [the case]" were protected opinion), *aff'd*, 444 N.E.2d 1005 (N.Y. 1982); *Anton v. St. Louis Suburban Newspapers, Inc.*, 598 S.W.2d 493, 499 (Mo. App. 1980) (editorial that refers to lawyer's "sleazy sleight-of-hand" in connection with change of membership on fire protection district's board of directors was not objectively verifiable assertion of fact).

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 11

SEA 2044802v3 0084269-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1287, 1300 (D.C. Cir. 1988) (statements in editorial criticizing plaintiff's strategy in

defending against libel counterclaim as "crude," "ugly," "pernicious," and "breathtaking in its

daring" were protected opinion); *Coles v. Washington Free Weekly, Inc.*, 881 F. Supp. 26, 32

(D.D.C. 1995) (statements that attorney's trial presentation was "vague," used "confusion as a

weapon," and failed to ask "key" questions were protected opinion); *Bergen v. Martindale-

Hubbell, Inc.*, 285 S.E.2d 6, 7 (Ga. 1981) (First Amendment protects the Martindale-Hubbell

ratings of attorneys); *Ferlauto v. Hamsher*, 74 Cal. App.4th 1394, 1403 (Cal. App. 1999)

(statements that lawyer was "Kmart Johnnie Cochran" and a "creepazoid attorney" were

protected opinion); *Kirsch v. Jones*, 464 S.E.2d 4, 6 (Ga. App. 1996) (statements in

newspaper that attorney "bungled" the case and should "not have touched the case with a ten-

foot pole" were protected opinions because they were opinions "about which reasonable

people might differ and which cannot be proved to be true or false").

      Avvo's ratings are even less capable of being proven false than many of these

statements.[7]  Indeed, the Avvo system closely resembles the one used by the defendant in

*Aviation Charter v. Aviation Research Group/US,* 416 F.3d 864 (8th Cir. 2005).  There, the

defendant, Aviation Research Group/US ("ARGUS"), published safety ratings of air charter

service providers, basing its methodology on a system with three main components: historical

safety ratings, current aircraft and pilot data, and on-site safety audits.  *Id.* at 866.  Like Avvo,

ARGUS searched publicly available records seeking relevant information, and assigned them

---

[7] In a different context altogether—attorney advertising—the Supreme Court has noted the importance of conveying attorney information to consumers.  *See, e.g., Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 646 (1985) ("The value of the information presented in [attorney] advertising is no less than that contained in other forms of advertising—indeed, insofar as appellant's advertising tended to acquaint persons with their legal rights who might otherwise be shut off from effective access to the legal system, it was undoubtedly more valuable than many other forms of advertising."); *see also Peel v. Attorney Registration and Disciplinary Comm'n of Ill.*, 496 U.S. 91, 105 (1991) (rejecting "the paternalistic assumption that [consumers of legal services] are no more discriminating than the audience for children's television"); *Bates v. State Bar of Arizona*, 433 U.S. 350, 375 (1977) (noting the public is "sophisticated enough to realize the limitations of advertising" and is better "trusted with correct but incomplete information" than "kept in ignorance" and that "for every attorney who overreaches through advertising, there will be thousands of others who will be candid and honest and straightforward" and "it will be in the latter's interest… to assist in weeding out those few who abuse their trust").

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

a score.  *Id.*  Like Avvo, ARGUS grouped each carrier into one of several ratings.  *Id.* at 867.

And, like Avvo, ARGUS did not purport to provide completely accurate information, noting

in a disclaimer the ratings were based on information obtained from publicly available

resources, and were advisory.  *Id.*  ARGUS gave the company a "Does Not Qualify" rating,

and one of the plaintiff's planes crashed the following year, killing Senator Paul Wellstone.

*Id.*  The plaintiff sued.  The Eight Circuit found that "although ARGUS's comparison [of

carriers] relies in part on objectively verifiable data, the interpretation of those data was

ultimately a subjective assessment, not an objectively verifiable fact." *Id.* at 868 (quotation

marks and citations omitted), 870.

Here, too, the Avvo rating is "a subjective interpretation of multiple objective data

points leading to a subjective conclusion."  *Id.* at 871.  As such, it is not constitutionally

actionable.

### C.     The First Amendment Precludes the Unlimited Liability that Plaintiffs Seek Against Avvo.

Plaintiffs cannot evade this constitutional bar through the expedient of alleging a claim

under the Consumer Protection Act instead of a defamation claim.  First Amendment

protections "are not peculiar to [defamation] actions but apply to all claims *whose gravamen

is the alleged injurious falsehood of a statement.*"  *Blatty v. New York Times Co.*, 42 Cal.3d

1033, 1042-43 (Cal. 1986) (emphasis added); *see also Reader's Digest Ass'n v. Superior

Court*, 37 Cal.3d 244, 265 (Cal. 1984) ("liability cannot be imposed on any theory for what

has been determined to be a constitutionally protected publication").  In *Hustler v. Falwell*,

the Supreme Court held that the First Amendment barred not only the Reverend Jerry

Falwell's defamation claim arising from a satirical feature in *Hustler* magazine, but also his

intentional infliction of emotional distress claim arising from the same publication.  485 U.S.

46, 50, 54-57 (1988).

Following the Supreme Court's lead, courts nationwide have found that where the

targeted speech constitutes protected opinion, plaintiffs may not raise a variety of other claims

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — 13

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

arising from the same facts, including consumer protection.  *Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.,* 175 F.3d 848 (10th Cir. 1999) (intentional interference with contractual and business relations and antitrust); *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990) (trade libel and tortious interference with business relationships); *Deupree v. Iliff,* 860 F.2d 300 (9th Cir. 1988) (intentional infliction of emotional distress); *Presidio Enter., Inc. v. Warner Bros. Distrib. Corp.,* 784 F.2d 674 (5th Cir. 1986) (state consumer protection statute); *Redco Corp. v. CBS, Inc.*, 758 F.2d 970 (3d Cir. 1985) (interference with contractual relations); *Films of Distinction, Inc. v. Allegro Film Productions, Inc*., 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) (trade libel, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage); *Brooks v. Paige*, 773 P.2d 1098 (Colo. 1988) (emotional distress); *Ireland v. Edwards,* 584 N.W.2d 632 (Mich. App. 1998) (intentional infliction of emotional distress and false light invasion of privacy).

In this lawsuit, Messrs. Browne and Wenokur have targeted Avvo's protected opinions, and the "gravamen" of their claim is the "alleged injurious falsehood of a statement."  In other words, plaintiffs are angry (or annoyed) that Avvo's opinions about their lawyerly skills, which they consider "biased," "fallible," and "inaccurate," allegedly have harmed them professionally.  *See, e.g.,* Complaint ¶¶ 84-85 (claiming the ratings have cost Mr. Browne clients).  The First Amendment protects such speech no matter the claim.  To do otherwise would eliminate the required "breathing space" afforded by the First Amendment.  *See Hustler*, 485 U.S. at 52.  Indeed, to permit their lawsuit in these circumstances would allow any plaintiff upset about "false" opinion to slip a defamation claim through the back door without demonstrating the elements necessary for such a claim to pass constitutional muster.

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 14
SEA 2044802v3 0084269-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

**D.    Plaintiffs Have Failed to State a Claim Under the Washington Consumer Protection Act.**

Even if this Court finds that the First Amendment does not protect dissemination of the ratings, plaintiffs have failed to state a claim under the CPA.  Pursuant to RCW 19.86.020, private citizens may protect the public interest by showing that: "(1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition." *Fidelity Mortgage Corp. v. Seattle Times Co.*, 131 Wn. App. 462, 468-69, 128 P.3d 621 (2005) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)).

**1.    Avvo does not engage in "trade" or "commerce" under the CPA.**

Avvo does not engage in "trade" or "commerce," and is not involved in any commercial transaction with these plaintiffs, a prerequisite for liability under the CPA.  *See* RCW 19.86.020; *Fidelity Mortgage*, 131 Wn. App. 462.  The statute defines these terms as "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington."  RCW 19.86.010(2).

In *Fidelity Mortgage*, Division I of the Washington Court of Appeals rejected the plaintiff's argument that media publication of misleading mortgage rates—in a chart contained in a quarterly news article, for which mortgage lenders did not pay—stated a cause of action under the CPA.  131 Wn. App. 462.  As the court noted, "the quarterly chart is not paid advertising.  It is a news article, and as such it is not published in the conduct of any trade or commerce. ***It does not fall within those activities governed by RCW 19.86.020***." *Id.* (emphasis added).[8]  Indeed, the Court of Appeals ruled that Fidelity Mortgage's theory of

---

[8] This is consistent with other state law, including *Short v. Demopolis*, in which the state Supreme Court found the plaintiff could not assert negligence or malpractice against her attorney under the CPA because a lawyer's practice is not a sufficiently entrepreneurial activity to fall within the statute.  103 Wn.2d 52, 61-62, 691 P.2d 163, 167 (1984); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) (publishing a paid editorial does not mean that a newspaper is engaged in commercial speech); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1186 (9th Cir. 2001) (publishing an article to help sell magazine copies is

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 15

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   liability (identical to the legal theory plaintiffs advance here) was so meritless as to warrant

2   sanctions. *Id.* at 473-74.

3         Avvo, as a member of the media, collects and then disseminates information to

4   interested readers and consumers for free.[9]  As such, under Washington law, its publications

5   do not fall within trade or commerce, as required to subject it to the CPA.  In this respect,

6   Avvo, like other publishers of information over the internet, does not differ from more

7   traditional media.  Indeed, Avvo appears to be a classic media outlet, collecting data about

8   legal professionals and sharing such data with consumers.  As Justice Stevens explained in

9   *Reno v. ACLU*:

10           Anyone with access to the Internet may take advantage of a
     wide variety of communication and information retrieval
11   methods. These methods are constantly evolving and difficult to
     categorize precisely.... The Web is thus comparable, from the
12   readers' viewpoint, to both a vast library including millions of
     readily available and indexed publications and a sprawling mall
13   offering goods and services.

14           From the publishers' point of view, it constitutes a vast platform
     from which to address and hear from a worldwide audience of
15   millions of readers, viewers, researchers, and buyers. Any
     person or organization with a computer connected to the
16   Internet can "publish" information.

17   _____

not commercial speech).

18   [9] The newly enacted Washington reporter's privilege statute and Ninth Circuit precedent
confirm that Avvo falls within the modern definition of "media."  The new Washington shield
19   law, for example, defines "news media" as:

20           (a) Any newspaper, magazine or other periodical, book publisher, news
     agency, wire service, radio or television station or network, cable or satellite
21   station or network, or audio or audiovisual company, or ***any entity that is in
     the regular business of news gathering and disseminating news or
22   information to the public by any means***, including, but not limited to, print,
     broadcast, photographic, mechanical, internet, or electronic distribution; [and]
23   (b) Any person who is or has been an employee, agent, or independent
     contractor of any entity listed in (a) of this subsection, who is or has been
24   engaged in bona fide news gathering for such entity, and who obtained or
     prepared the news or information that is sought while serving in that capacity.

25

26   H.B. 1366, 2007 Leg., 60th Sess. (Wa. 2007) (enacted) (emphasis added).  In determining
whether the First Amendment shield applies, "the critical question… is whether [the entity] is
27   gathering news for dissemination to the public."  *Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir.
1993). Under these standards, Avvo and Mr. Britton are members of the media.

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — 16

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

521 U.S. 844, 851-53 (1997). Because the internet functions as the modern-day equivalent of print media, internet publishers such as Avvo cannot be subjected to claims under the CPA challenging the content of their publications.

### 2. Plaintiffs have failed to allege that Avvo proximately caused their alleged injuries.

Plaintiffs have also suffered *no direct harm* from Avvo's publication. *See Ass'n of Wash. Pub. Hosp. Dist. v. Philip Morris Inc.*, 241 F.3d 696 (9th Cir. 2001); *Fidelity Mortgage,* 131 Wn. App. 462 (finding CPA claim based on news article and advertisements of allegedly misleading mortgage rates so frivolous as to merit sanctions). Plaintiffs must show that Avvo's actions "proximately caused" their injuries, keeping in mind that Washington courts "are directed to interpret the CPA in light of federal court decisions interpreting federal antitrust law." *Id*. at 706.

Under Washington law, the subject of an allegedly deceptive statement generally lacks standing to sue under the CPA. *Fidelity Mortgage*, 131 Wn. App. at 469; *see also Blewett v. Abbott Labs.*, 86 Wn. App. 782, 938 P.2d 842 (1997) (finding indirect purchasers similarly lack standing under the CPA). In *Ass'n of Wash. Pub. Hosp. Dist.*, the Ninth Circuit applied a three-factor test to determine if the alleged wrongdoing and injury are "too remote" to allow recovery under the CPA: "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." 241 F.3d. at 701; *accord Fidelity Mortgage*, 131 Wn. App. at 470-71.

Here, based on the facts alleged in the Complaint, plaintiffs cannot show as a matter of law that Avvo's allegedly false advertising or publication proximately caused their claimed injuries. *First*, plaintiffs are not the most direct victims of Avvo's alleged misstatements—consumers who use the site in search of lawyers suffer the most direct harm. *Second*, it

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

would be difficult to evaluate plaintiffs' damages; even assuming *arguendo* that some individuals relied on allegedly "false" ratings, plaintiffs' case would depend on proof that these individuals otherwise would have used their services instead of those of the hundreds of thousands of other attorneys on the Avvo website. Plaintiffs do not allege Avvo damaged them by inducing them to rely on the ratings, and the damages it does allege are too remote and vague. **Finally**, to sustain the CPA claim, this Court would have to "adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." Presumably, under plaintiffs' theory, Avvo would owe damages to the unknown number of consumers who could have obtained better legal services from plaintiffs but for the consumers' reliance on Avvo. Further, even if plaintiffs could show that Avvo's ratings fell short in some respect, plaintiffs would also have to show that prospective customers would have chosen them to provide legal services but for their rating. Given that these consumers would be the directly injured parties, and assuming they can prove both reliance and causation, these consumers could bring a cause of action against the legally responsible parties for disseminating "false" ratings, by alleging state or federal statutory violations and common law tort liability, which would duplicate and multiply possible recoveries.

*Fidelity Mortgage* is instructive. There, a Washington appellate court affirmed dismissal of the plaintiff's CPA claim that it was harmed after a newspaper published allegedly false mortgage interest rates in a quarterly chart and in weekly advertisements. 131 Wn. App. at 471. The court found that the plaintiff did not have standing to sue because it did not rely upon such ratings, the damages would be too remote, and the apportionment of damages would be too complicated. *Id.*; *see also Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.,* 122 Wn. App. 736, 758, 87 P.3d 774 (2004) ("To be liable under the CPA, there must be a contractual relationship between the parties.").

Plaintiffs were at most indirectly harmed by Avvo's alleged actions, since they did not pay for any services from Avvo's website or rely on any of the information published therein. Nor is there any other relationship between plaintiffs and Avvo, similar to the duty to warn

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 18
SEA 2044802v3 0084269-000001

between a drug company and a prescribing physician, as was present in *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 312-14, 858 P.2d 1054 (1993), or the transactional chain of title that was shown in *Northwest Airlines, Inc. v. Ticket Exch., Inc*., 793 F. Supp. 976 (W.D. Wash. 1992). Thus, plaintiffs do not have standing to bring their CPA claims relating to their disagreements with the content of the Avvo website.

**E.    Section 230 of the Communications Decency Act Bars Liability for Avvo's Posting of Third-Party Content.**

Plaintiffs allege Avvo allows attorneys and other third parties to manipulate attorney ratings by submitting misleading information. Compl. ¶ 7, 41, 71. They also contend Avvo's posting of Mr. Browne's disciplinary history, and incorporation of it into its rating, supports their CPA claim. *See* Compl. ¶ 23. To the extent plaintiffs rely on the posting of third-party content, their claims fail under Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230. Section 230 provides absolute immunity for an "interactive computer service," such as Avvo, from claims based on tortious or unlawful "information provided by another information content provider." *Id.* This case falls squarely within Section 230, because it arises from online posting of content from (1) state bar associations, (2) attorneys, (3) attorney websites, and (4) clients. *See* Shaak Decl., Ex. A at 11.

The scope of immunity under Section 230 is "quite robust." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (Section 230 barred claims against a website that provides matchmaking services after someone impersonated the plaintiff, created a profile, and posted false information to that profile); *see also Batzel v. Smith*, 333 F.3d 1018, 1030 and n.15 (9th Cir. 2003); *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). To that end, "Congress made a policy choice… not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Id.* at 1123-24 (quotation marks and citation omitted). Given "the amount of information communicated via interactive computer services…, [i]t would be impossible for service providers to screen each of their

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 19
SEA 2044802v3 0084269-000001

1    millions of postings for possible problems." *Id.*  Thus, Section 230 precludes courts from

2    entertaining claims against websites like Avvo for information originating with any third-

3    party user of its service.  *Id.* at 1123.[10]

4         This protection applies even after a provider receives notice of a claim of alleged

5    falsity.  *Zeran,* 129 F.3d at 328-30 (affirming dismissal of a claim against AOL for posting

6    what turned out to be a hoax, even though, after notice of the hoax, AOL did not immediately

7    take down the posting, allowed similar subsequent postings and refused to post a retraction).

8    In *Zeran,* the Fourth Circuit cited the "impossible burden," given "the sheer number of

9    postings" that liability based on notice would impose.  *Id.*  Moreover, notice-based liability

10   "would provide third parties with a no-cost means to create the basis for future lawsuits," if

11   "displeased" with the speech of another, simply by "notifying" the service provider of a claim

12   of unlawful or defamatory material.  *Id.*

13        Section 230 bars the claims that plaintiffs base on the posting or republication of third-

14   party content.  Avvo cannot be held liable for information it posts from state bar associations,

15   attorney websites, attorneys, and clients.  As in *Carafano*, the fact that Avvo posts its own

16   content, in addition to this information, is immaterial.  339 F.3d at 1125 ("[E]ven assuming

17   Matchmaker could be considered an information content provider, the statute precludes

18   treatment as a publisher or speaker for 'any information provided by another information

19   content provider.'").

20        Requiring Avvo to verify the truth of such material would create the very chilling

21   effect Congress sought to remedy with Section 230.  Consequently, this Court should find that

22   Avvo is immune from these allegations in light of Section 230's "robust" protections.

23   ───────────────────

24   [10] The Ninth Circuit's decision in *Fair Hous. Council v. Roommates.com* does not change this
     result.  ___ F.3d ____, 2007 WL 1412650 (9th Cir. May 15, 2007) (Section 230 does not bar

25   a Fair Housing Act Claim against an online roommate-finding service).  There, the court
     distinguished *Carafano* by stating that the plaintiff "channels the information based on

26   members' answers to various questions, as well as the answers of other members." *Id.* at *5.
     Avvo does no such thing, and as in *Carafano*, "[t]he fact that [Avvo] classifies user

27   characteristics into discrete categories and collects responses to [] questions does not
     transform [it] into a 'developer' of the 'underlying information.'" 339 F.3d at 1124.

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — 20
SEA 2044802v3 0084269-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**F.     The First Amendment Bars Liability for Republication of Disciplinary Actions by the Washington State Bar Association.**

**1.     A publisher cannot be liable for reprinting truthful information from public records about a matter of public concern.**

The First Amendment prohibits liability where a publisher lawfully obtains and prints truthful information about a matter of public concern.  *See Florida Star v. B.J.F.,* 491 U.S. 524 (1980) (publication of rape victim's name, lawfully obtained from police report, was absolutely privileged despite state statute prohibiting such activity); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979) (statute criminalizing truthful publication of juvenile offenders, lawfully obtained, held unconstitutional); *Cox Broad. Corp. v. Cohn,* 420 U.S. 469 (1975) (First Amendment bars state from sanctioning accurate publication of rape victim's name obtained from publicly available judicial records); *Lence v. Hagadone Inv. Co.*, 853 P.2d 1230, 1236 (Mont. 1993) ("If the public's interest in the dissemination of truth outweighs the state's interest in protecting the privacy of rape victims or juvenile offenders, then surely the public's interest in accurate information about attorney discipline outweighs the state's interest in preserving… confidentiality."), *rev'd on other grounds*, *Sacco v. High Country Indep. Press, Inc.*, 271 Mont. 209, 896 P.2d 411 (Mont. 1995).

The First Amendment protects Avvo's publication of attorney disciplinary information.  Plaintiffs do not allege that Avvo's publication of Mr. Browne's admonition from the Washington State Bar Association, or disciplinary information from state bar associations more generally, is untruthful, or that Avvo did not obtain the information lawfully.  The First Amendment protects Avvo's publication of the WSBA admonition.

**2.     The fair report privilege also bars liability for publication of disciplinary history.**

Furthermore, the well-established common law fair report privilege also protects Avvo's publication of attorney disciplinary information obtained from public records. Republication of documents "filed and available for public inspection" are privileged.  *Herron v. Tribune Publ'g. Co.*, 108 Wn.2d 162, 179, 736 P.2d 249 (1987)*; see also Clapp v. Olympic View Publ'g Co.*, 137 Wn. App. 470, 477, 154 P.3d 230 (2007); *Alpine Indus. Computers,*

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 21

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Inc. v. Cowles Publ'g Co.*, 114 Wn. App. 371, 382, 57 P.3d 1178 (2002), *as amended*, 64 P.3d 49 (2003); *O'Brien v. Tribune Publ'g Co.*, 7 Wn. App. 107, 117, 499 P.2d 24 (1972); *Mark v. Seattle Times Co.*, 96 Wn.2d 473, 488-89, 635 P.2d 1081 (1981).

Courts must construe the privilege liberally, *Mark v. Seattle Times*, 96 Wn.2d at 488, in accordance with the longstanding recognition that "[i]n the First Amendment area, summary procedures are… essential.  For the stake is free debate…. The threat of being put to the defense of a lawsuit… may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself." *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966); *see also Mohr v. Grant*, 153 Wn.2d 812, 821, 108 P.3d 768 (2005).  "[S]o long as the publication is attributable to an official proceeding and is an accurate report or a fair abridgement thereof, it is privileged." *Alpine Indus.*, 114 Wn. App. at 385.  Here, Avvo's republication of the WSBA's attorney disciplinary proceedings is absolutely privileged.

## IV.    CONCLUSION

"However pernicious" their Avvo Rating "may seem" to these lawyer-plaintiffs, as with any opinion, "we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz,* 418 U.S. at 339.  If they disagree with defendants' opinions and Avvo's assessment of how well they could handle legal matters for potential clients, plaintiffs' proper "remedy… is more speech, not enforced silence." *Whitney v. California*, 274 U.S. 357, 377 (1927).  Plaintiffs have already engaged in precisely the sort of remedial efforts that the Constitution contemplates: they have taken their concerns to the press and the court of public opinion, where they belong.  But they do not belong in this Court.

For the foregoing reasons, defendants respectfully request that the Court dismiss this case with prejudice.

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7 920 RSL) — 22
SEA 2044802v3 0084269-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    DATED this 28th day of June, 2007.

2                                         Davis Wright Tremaine LLP
                                          Attorneys for Defendants Avvo, Inc., and
3                                         Mark Britton

4
                                          By s/ Bruce E. H. Johnson_____
5                                            Bruce E. H. Johnson, WSBA # 7667
                                             Stephen M. Rummage, WSBA # 11168
6                                            Ambika K. Doran, WSBA # 38237
                                             1201 Third Avenue, Suite 2200
7                                            Seattle, Washington  98101-3045
                                             Telephone: (206) 757-8069
8                                            Fax: (206) 757-7069
                                             E-mail: brucejohnson@dwt.com,
9                                            steverummage@dwt.com,
                                             ambikadoran@dwt.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7          Davis Wright Tremaine LLP
920 RSL) — 23                                                LAW OFFICES
SEA 2044802v3 0084269-000001                        Suite 2200 · 1201 Third Avenue
                                                    Seattle, Washington 98101-3045
                                                    (206) 622-3150 · Fax: (206) 757-7700

CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Steve W. Berman – steve@hbsslaw.com

Jeniphr A.E. Breckenridge – jeniphr@hbsslaw.com

Robert Gaudet, Jr. – robertg@hbsslaw.com

Davis Wright Tremaine LLP
Attorneys for Defendants Avvo, Inc. and
Mark Britton

By  s/Bruce E. H. Johnson
Bruce E. H. Johnson, WSBA # 7667
Stephen M. Rummage, WSBA # 11168
Ambika K. Doran, WSBA # 38237
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone: (206) 757-8069
Fax: (206) 757-7069
E-mail: brucejohnson@dwt.com,
steverummage@dwt.com,
ambikadoran@dwt.com

DEFENDANTS' MOTION TO DISMISS COMPLAINT (CV7
920 RSL) — 24
SEA 2044802v3 0084269-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700