1

Honorable Robert S. Lasnik

2

3

4

5

6

7       UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
                                AT SEATTLE

8

9    JOHN HENRY BROWNE and ALAN J.
     WENOKUR, individually and on behalf of          No. CV 07 920 RSL
10   others similarly situated,

11                                                   PLAINTIFFS' OPPOSITION TO
                                  Plaintiffs,        MOTION TO DISMISS CLASS ACTION
                                                     COMPLAINT UNDER FED. R. CIV. P.
12         v.                                        12(C)

13   AVVO, INC., MARK BRITTON and JOHN               NOTED FOR:  August 10, 2007
     DOES 1-25,
14
                                  Defendants.
15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)
Case No. CV 07 920 RSL

001977-11 184033 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

Dockets.Justia.com

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    PRELIMINARY STATEMENT .................................................................1

4    II.    PLAINTIFFS' COMPLAINT.....................................................................2

5    A.    Avvo Rolls Out Its Website to Profile and Rate Attorneys for Consumers............2

6    1.    The Avvo Lawyer Profile and "Avvo Rating" .......................2

7    2.    Avvo promotes its ratings to consumers as "unbiased,"
         showing "no favoritism" and based on a "mathematical
8         model" – *not* a mere opinion..................................................3

9    B.    The Avvo Ratings and Profiles are Arbitrary and Capricious ...............4

10    1.    Wild discrepancies in Avvo Ratings....................................4

11    2.    Avvo reports false information and allows it to remain in
         lawyer profiles .............................................................4

12
      3.    The gaming of the Avvo System – by Avvo and others .............5
13
      C.    Participate or Else:  Avvo's Business Model is Coercive, Built on
14         Real Threats to Lawyers' Professional Reputations ...................6

15    D.    Avvo's Conduct has Injured Plaintiffs....................................7

16    III.    LEGAL ARGUMENT ...........................................................................8

17    A.    Legal Standard Governing This Motion .................................8

18    B.    This is a Consumer Protection Act Case – *Not* a Defamation
         Case – and Plaintiffs Have Properly Alleged All Elements of
19         Their Consumer Protection Act Claims..................................9

20    1.    Avvo does not dispute that Plaintiffs sufficiently pled
         two elements of their CPA claim......................................9

21
      2.    A commercial website is "trade or commerce" ....................11
22
      3.    Plaintiffs and the Class have suffered direct harm from
23         Avvo's conduct and adequately alleged that Avvo
         proximately caused their alleged injury...............................13
24
      4.    The First Amendment does not preempt the CPA ..................16
25
      C.    Avvo's So-Called "Opinion" Content Does Not Meet the
26         Standard for Protected Speech.........................................17

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - i
Case No. CV 07 920 RSL

001977-11 184033 V1



1                1.    "It's just the facts, so to speak." ..................................................17

2                2.    Avvo's conduct and content are not protected speech ..............................18

3          D.    Plaintiffs Do Not Assert Liability for Republishing Content
              From Third Parties ................................................................................23

4

5                1.    Communications Decency Act § 230 does not immunize
              Avvo from liability for its ratings and other website
              conduct it provides ...................................................................................23

6

7                2.    While republishing disciplinary actions by the Washington
              State Bar Association may be protected, Avvo's misleading
              characterizations of the disciplinary proceedings are not ..........................24

8

9          E.    Plaintiffs Should be Granted Leave to Amend ...................................................25

10    IV.    CONCLUSION ...............................................................................................................25

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - ii
Case No. CV 07 920 RSL

001977-11  184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1

## TABLE OF AUTHORITIES

2

**Page**

### CASES

*Association of Wash. Public Hosp. Dists. v. Phillip Morris, Inc.,*
        241 F.3d 696 (9th Cir. 2001) ................................................................14

*Aviation Charter, Inc. v. Aviation Research Group/US,*
        416 F.3d 864 (8th Cir. 2005) ....................................................18, 21, 22

*Batzel v. Smith,*
        333 F.3d 1018 (9th Cir. 2003) .............................................................13

*Blewett v. Abbott Labs.,*
        86 Wn. App. 782, 938 P.2d 842 (1997) ...............................................14

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
        2007 U.S. App. Lexis 11350 (9th Cir. May 23, 2007) .........................23

*Ferlauto v. Hamsher,*
        74 Cal. App. 4th 1394 (Cal. App. 1999) ..............................................21

*Fidelity Mortgage Corp. v. Seattle Times Co.,*
        131 Wn. App. 462, 128 P.3d 621 (2005) ........................................13, 15

*Flowers v. Carville,*
        310 F.3d 1118 (9th Cir. 2002) ...............................................................8

*Gertz v Robert Welch, Inc.,*
        418 U.S. 323 (1974) ........................................................................18, 19

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
        105 Wn. 2d 778, 719 P.2d 531 (1986) ...................................................9

*Harris v. City of Seattle,*
        315 F. Supp. 2d 1112 (W.D. Wash. 2004), *aff'd,*
        2005 U.S. App. Lexis 21543 (9th Cir. 2005) .........................................9

*Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., L.L.C.,*
        134 Wn. App. 210, 135 P.3d 499 (2006) .............................................15

*Hustler Magazine v. Falwell,*
        485 U.S. 46 (1988) .........................................................................16, 17

*Liberty Lobby, Inc. v. Dow Jones & Co., Inc.,*
        838 F.2d 1287 (D.C. Cir. 1988) ...........................................................21

*McGlinchy v. Shell Chemical Co.,*
        845 F.2d 802 (9th Cir. 1988) ...............................................................17

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - iii
Case No. CV 07 920 RSL

001977-11 184033 V1



*Milkovich v. Lorain Journal Co.,*
     497 U.S. 1 (1990)............................................................................18, 19

*Northwest Airlines, Inc. v. Ticket Exch., Inc.,*
     793 F. Supp. 976 (W.D. Wash. 1992)..................................................15

*Partington v. Bugliosi,*
     56 F.3d 1147 (9th Cir. 1995) ....................................................19, 20, 21

*Pennington v. Singleton,*
     606 S.W.2d 682 (Tex. 1980)..................................................................22

*Presidio Enters., Inc. v. Warner Brothers Distrib. Corp.,*
     784 F.2d 674 (5th Cir. 1986) ................................................................22

*R.A.V. v. City of St. Paul,*
     505 U.S. 377 (1992)..............................................................................16

*Stephens v. Omni Ins. Co.,*
     159 P.3d 10 ...........................................................................9, 12, 15

*Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.,*
     122 Wn. 2d 299, 858 P.2d 1054 (1993)..........................................12, 15

*Wine and Spirits Retailers, Inc. v. Rhode Island,*
     364 F. Supp. 2d 172 (D.R.I.), *aff'd,* 418 F.3d 36 (1st Cir. 2005)............16

## STATUTES

47 U.S.C. § 230...........................................................................13, 23

RCW 19.86.010(2).............................................................................12

RCW 19.86.020 .........................................................................2, 12

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - iv
Case No. CV 07 920 RSL

001977-11  184033 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1

## I.    PRELIMINARY STATEMENT

2    This case is not about protected free speech or "opinions."  The complaint alleges that

3 Avvo's development and dissemination of its rating system are unfair or deceptive in that it

4 purports to provide objective and "unbiased" ratings of attorneys based on a top secret

5 "mathematical model" so that a consumer can choose "the right lawyers."[1]  Rather than an

6 unbiased "mathematical" rating, however, what Avvo provides is a capricious number based on a

7 wide range of undisclosed factors.  As described in the complaint, the ratings are easily

8 manipulated – often by the attorneys profiled themselves.  And there is no predictability or logic

9 as to how similar factors will be weighed or rated by Avvo.  For example, a disbarred, dead

10 attorney is rated higher than one of the named plaintiffs; the CEO of Avvo, who has practiced on

11 and off on for 15 years, is rated higher than most of the United States Supreme Court justices.

12 Moreover, the so-called "mathematical model" is manipulated based on the volume of

13 information provided.  If a lawyer claims his or her Avvo profile and provides any information to

14 Avvo, no matter the subject, the lawyer's profile is immediately boosted.  So a lawyer who

15 inputs that he received an award in a softball game can raise his rating, and this rating is what a

16 consumer is supposed to rely on.[2]  The flip side of this is that lawyers who refuse to participate

17 by providing biographical information are punished with low or mediocre ratings – based on a

18 lack of information.  In short, all lawyers are not created equal at Avvo – those who provide

19 more information are more equal than others.  For all of these reasons, the ratings are false and

20 misleading to consumers seeking legal representations as they are not the objective, unbiased

21 math based system that Avvo represents is in place.  The publication of these arbitrary and

22 inaccurate attorney ratings has resulted in damage to the business reputations of thousands of

23 lawyers who have been branded with undeservedly low ratings.

24

---

25    [1] Avvo began characterizing its ratings as "opinion" only after the filing of Plaintiffs' Class Action Complaint
in its motion to dismiss.  As discussed below, this characterization is a legal convenience for Avvo which is belied
by other contents on its website.

26    [2] ¶ 46(h).  "¶ ___" refers to paragraphs of the Class Action Complaint, unless otherwise noted.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 1
Case No. CV 07 920 RSL

001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    The First Amendment does not protect false and misleading speech, and the gist of the

2    Avvo site is not mere "opinion."  And, it is well-established that unfair or deceptive acts or

3    practices in the conduct of any trade or commerce are **unlawful** under Washington's Consumer

4    Protection Act.  RCW 19.86.020.  This includes the publication of false, deceptive and unfair

5    materials as alleged in the Complaint.

6    ## II.     PLAINTIFFS' COMPLAINT

7    **A.     Avvo Rolls Out Its Website to Profile and Rate Attorneys for Consumers**

8    In June 2007, Avvo rolled out its website, www.Avvo.com.  ¶ 32.  The website states that

9    its target is consumers seeking lawyers.  *Id.*  The website's stated purpose is to rate and profile

10   "every lawyer, so you can choose the right lawyer."  *Id.*[3]  Although there is no fee to consumers

11   or lawyers to participate in the website, Avvo intends to sell lawyer advertising on its website, a

12   plan it has promoted on the site since its debut.[4]

13   **1.     The Avvo Lawyer Profile and "Avvo Rating"**

14   The principal features of Avvo's business are the Avvo lawyer profile and what it calls

15   the "Avvo Rating."  Avvo purports to profile and rate every licensed lawyer in every covered

16   state on a 1.0 to 10.0, or "Superb" to "Extreme caution," scale and then publishes the results on

17   its website.  ¶¶ 1, 3.  Within one week of its debut, Avvo had rated **tens of thousands** of lawyers.

18   Avvo says that it collects information from "multiple sources," primarily public records,

19   to create its original lawyer profiles.  ¶ 6.  Avvo collects the information with very limited effort

20   on its own part, using automated search engines and web crawlers.  The result is an unverified,

21

22   ---

       [3] Plaintiffs' submission is limited to the complaint's allegations, including the website contents as of the
   Complaint filing.  Avvo suggests that under the incorporation-by-reference doctrine, the Court may consider website
23   content from any date – pre-or post-filing, Def. Mot. at 2, and uses pages it has created and published *after* the
   Complaint was filed to support its motion.  *See, e.g.*, Def. Mot. at 2 n.1, 3 n.2.  This is an improper application of the
24   doctrine.  If this were allowed, implications would be monumentous.  Websites are notoriously dynamic – with the
   contents changing daily.  This is particularly true of interactive content websites such as www.avvo.com.  It would
   be patently unfair to give Avvo the advantage of incorporating into its arguments content it created after the
25   Complaint was filed and the opportunity to create responsive content under the guise of the "incorporation by
   reference" doctrine.  Plaintiffs have found no published instance where a court has permitted this use of the
   incorporation-by-reference doctrine.

26       [4] www.avvo.com (June 11, 2007), Declaration of Steve W. Berman In Connection With Plaintiffs' Opposition
   To Motion To Dismiss Class Action Complaint Under Fed. R. Civ. P. 12(c) ("Berman Decl.") Ex. 1 at BD 3.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 2
Case No. CV 07 920 RSL

**HB**

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

limited profile on each lawyer featured, often just name and address, the date of bar admission and whether the lawyer has been subject to professional discipline. ¶¶ 6, 8. The Avvo model will not work without additional biographical information obtained directly from lawyers. Avvo encourages every rated lawyer to "claim your profile" on Avvo's website. ¶¶ 36, 40, 51. To claim a profile, a lawyer must provide a credit-card number and personal biographical data. ¶¶ 26, 51, 56. In essence, Avvo expects the lawyer to assist Avvo by populating the Avvo database with his or her personal biographical information otherwise missing from Avvo databases.

The source of the Avvo Ratings is a closely guarded secret. Avvo calculates the Avvo Rating using its "proprietary mathematical model." ¶¶ 6, 7, 37, 38. Avvo does not disclose the basis of its ratings, either the precise factors used or the weight assigned to those factors. ¶ 6.

In addition to the Avvo Rating, Avvo rates lawyers in up to three other categories: (i) "Experience;" (ii) "Industry Recognition;" and (iii) "Professional Conduct." Originally the Industry Recognition category was published as "Trustworthiness," insinuating that lawyers who scored low in this category were not trustworthy. ¶ 4. Trustworthiness has since been removed as one of the categories, but only after Avvo had publicly denounced many lawyers as "not trustworthy." *Id*.

### 2. Avvo promotes its ratings to consumers as "unbiased," showing "no favoritism" and based on a "mathematical model" – *not* a mere opinion

Avvo's current characterization of its ratings as "opinion" is a convenience born of litigation. To the public, Avvo promotes the Avvo Rating as an objective source of information, not the company's "opinion." ¶ 5. Avvo publicly represents that each Avvo Rating is based on "deep knowledge," that it is "*unbiased*" and shows "*no favoritism*." ¶¶ 5, 15. As an additional imprimatur of its objectivity, Avvo claims it calculates the Avvo Ratings using a "*mathematical model*" and that this formula will allow a consumer to "choose the right lawyer." ¶¶ 5, 32-33.

Avvo never discloses to the public that Avvo's mere lack of information about a lawyer (rather than a lawyer's relative competence) can produce a low rating. ¶ 44. Instead, Avvo leads

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 3
Case No. CV 07 920 RSL
001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

consumers to believe that lower scores for lawyers are objective, mathematically-derived scores that are based on poor lawyering.  ¶¶ 32-33.

**B.    The Avvo Ratings and Profiles are Arbitrary and Capricious**

That Avvo's "unbiased" system was arbitrary and capricious became apparent as soon as the website went live.  Discrepancies among the ratings of lawyers with similar profiles raised questions.  Although the Avvo site claims that "all lawyers are judged by the same standards,"[5] it immediately became clear that the ratings could be manipulated in a number of ways, neither objective nor mathematical nor indicative of a lawyer's professional competence or ability to handle a particular legal matter.  ¶¶ 7, 40, 41, 42, 46(h).

**1.    Wild discrepancies in Avvo Ratings**

Given the cursory nature of Avvo's investigation, coupled with its insistence on rating each and every lawyer practicing within a covered state, it is not surprising that there are many examples of wildly inaccurate ratings from a system that Avvo describes as "unbiased" and "mathematical."  The Complaint describes several.  ¶¶ 10-11, 46-49.  The dean of the Stanford University Law School, for example, is rated "Average" – lower than a ***disbarred*** New York lawyer who is rated "Very Good."  *Id.*  Stanford University ethics professor and member of the Avvo board of directors, Deborah Rhode, is likewise rated higher than the hapless Stanford dean – she scored a "10.0 Superb" rating.  ¶ 11.  Of course, Avvo's CEO and founder defendant Mark Britton, while a relatively inexperienced lawyer, is rated "Excellent" – higher than any sitting United States Supreme Court justice and higher than the incoming President of the ABA, William Neukon, who is rated 7.4.  ¶¶ 46(a), 10.[6]

**2.    Avvo reports false information and allows it to remain in lawyer profiles**

The Avvo system also results in the reporting of numerous falsehoods within the lawyer profiles.  Lawyers who have practiced both in a state that Avvo covers and other states have their

---

[5] www.avvo.com (June 11, 2007), Berman Decl. Ex. 2 at BD 6-7.

[6] The Complaint is replete with allegations of other instances where Avvo's ratings are grossly misleading.  ¶¶ 11, 46(a)-(h) – 50.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 4
Case No. CV 07 920 RSL

001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

experience levels grossly under-reported in ways that can damage their community standing and may result in a lower Avvo Rating.  Avvo reports that a Bremerton, Washington lawyer who has practiced for 30 years total – and has served as both an Alaska state court judge and chief law enforcement officer in Alaska – has practiced for just 9 years because Avvo does not cover Alaska.  ¶ 46(g).  Avvo will not change the profile to report the lawyer's experience accurately. *Id.*

Avvo also falsely reports the practice areas for hundreds or thousands of lawyers.  Avvo reports that just 20% of John Henry Browne's practice is devoted to criminal law.  In fact, Browne practices criminal law 100% of the time.[7]  Discrepancies such as this can be significant to the lawyers being rated.  A consumer seeking a criminal lawyer might reasonably pass over Browne for a lawyer who practices criminal law more regularly.

### 3.    The gaming of the Avvo System – by Avvo and others

Avvo defends the secrecy surrounding its ratings:  "we don't want anyone to try to game the Avvo Rating system."  ¶ 6.  This itself is deceptive, as in reality, Avvo built the ability "to game the Avvo rating system" into the system itself.  ¶ 7.  Avvo assigns each lawyer an initial rating derived from the limited information its search engines could collect.  After the lawyer profile appears, lawyers and others can manipulate the Avvo Rating for themselves or other lawyers.  *Id.*  Lawyers who supply additional biographical information or encourage colleagues, clients, friends and family to provide endorsements are immediately rewarded by a higher Avvo rating.

Significantly, the Avvo Rating does not discriminate between biographical data relevant and irrelevant to legal practice.  Rather, the system is biased toward added information of any kind.  A lawyer who is willing to provide personal biographical information will almost certainly be rewarded with higher Avvo Rating.  Bellevue lawyer Enrico Leo boosted his Avvo rating solely by claiming his profile with information about two softball-league awards.  ¶¶ 7, 46(h).

---

[7] www.avvo.com (June 14, 2007), Berman Decl. Ex. 3 at BD 12.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 5
Case No. CV 07 920 RSL

001977-11  184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

**C.    Participate or Else:  Avvo's Business Model is Coercive, Built on Real Threats to Lawyers' Professional Reputations**

It would be one thing if lawyers profiled could elect to participate in the Avvo business and the system's biases were clearly revealed to consumers, but neither is the case.  Avvo gives lawyers no choice as to whether they will participate or be rated.  ¶¶ 9, 21, 51.  Lawyers who ignore the low-to-average rating that Avvo assigns to lawyers who have not claimed their profile do so at their peril and risk damage to their professional reputation among consumers.  ¶ 9.  Avvo has repeatedly told lawyers who have objected to their own inclusion or ratings that it will not remove information under any circumstances.  ¶ 21.  Avvo's message to lawyers who object to their inclusion or rating is simple:  ***participate or else***.  ¶ 9.  The "or else" is the penalty of a mediocre and often baseless Avvo Rating.  *Id*.  Avvo informs lawyers that the only way to ameliorate such a rating is to claim their profile and provide more biographical information because there is a direct relationship between the amount of information provided for a lawyer and the lawyer's Avvo rating.  ¶ 9.  At the same time, Avvo continues to promote the ratings to the public as "mathematical" and "unbiased."  There is no disclosure that a lawyer's low or mediocre rating is often based on the lawyer's refusal to participate in Avvo's scheme.

With this negative incentive, Avvo collects more information on lawyers – with no expense or effort on its behalf.  At the same time, Avvo promotes this rating as an "unbiased" "mathematical calculation" reflecting no "favoritism" that is a reliable "assessment of how well [the] lawyer can handle [the consumer's] legal issue."  ¶ 51.  And it is this information that is the lifeblood of Avvo's business.  By providing a credit-card information, claiming his profile and filling in the blanks in Avvo's database, a lawyer will be rewarded by an immediate boost in his or her rating for the public to see.

This reputational blackmail is intentional.  Avvo's business model is predicated on coercing lawyers to provide the personal biographical details the site needs to operate in exchange for a higher rating from the site.  The defendant CEO stated the site's grandiose goal:

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 6
Case No. CV 07 920 RSL

001977-11  184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  to "bring [] together information for over 650,000 attorneys in one easily searchable place."  ¶ 2.

2  But from the first day, it was evident that Avvo had done virtually no work to gather information

3  on rated lawyers, other than deploying search engines to harvest publicly available information

4  elsewhere on the Internet.[8]  Naturally, this left large information gaps.  To execute on its

5  business plan, Avvo required much more information quickly.  To get it, Avvo intended to rely

6  on the lawyers they were profiling – whether those lawyers liked it or not.

7       The tactics Avvo used to reach its goal constitute outright coercion.  It is this conduct,

8  together with certain website content, that Plaintiffs challenge as part of Avvo's unfair or

9  deceptive scheme to coerce lawyer participation in the company's fledgling business in violation

10  of the Washington Consumer Protection Act ("CPA").

11  **D.    Avvo's Conduct has Injured Plaintiffs**

12       Avvo's conduct in publishing low ratings for lawyers has damaged the reputation and

13  good will of their legal practices.  The Complaint alleges with specificity the Avvo acts or

14  practices that have harmed Plaintiffs Browne and Wenokur.  Avvo initially assigned Browne an

15  Avvo Rating of 3.7 points or "Caution."  ¶ 21.  Mr. Browne complained to Avvo, but refused to

16  provide a credit card and "claim his profile."  ¶ 22.  As a result, his score remained.  After he

17  received one anonymous client endorsement, his rating changed from 3.7 to 5.2 or "Average."

18  *Id*.  Nothing else in Mr. Browne's profile had changed.  *Id*.  Defendant Britton claimed that

19  Mr. Browne's "Caution" or "Average" ratings were justified by a disciplinary proceeding after

20  which Mr. Browne received an Admonishment, but never the higher sanctions of suspension or

21  disbarment.  ¶ 23.  During the same period, the Complaint alleges, a lawyer with significantly

22  less experience with one suspension enjoyed a 6.2 or "Good" rating.  ¶ 46(d).  A simple Internet

23  search revealed that the "Good" lawyer had not only been suspended, but had been ***disbarred***.

24  *Id*.  As a result of Avvo's unfair and deceptive "Poor" rating of Mr. Browne, two of Plaintiff

25  Browne's clients terminated his representation and sought new counsel.  ¶ 24.

26

---

[8] *See*, *e.g.*, ¶ 49 (Avvo misses information on a lawyer's website Avvo refers to).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 7
Case No. CV 07 920 RSL
001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    Avvo has also attempted to coerce Mr. Wenokur to provide credit-card information and

2    additional biographical data for its database in exchange for an improved Avvo rating.  ¶ 26.

3    Mr. Wenokur refused.  *Id.*  Avvo concedes that "because he refuses to fill out a form on the site,"

4    it assigned plaintiff a mediocre rating.  Def. Mot. at 1.  Despite his stellar professional record,

5    Mr. Wenokur's Avvo Rating remains at "Good."  *Id.*[9]  Avvo refused to change Mr. Wenokur's

6    profile.  ¶¶ 26-27.[10]

7                        **III.    LEGAL ARGUMENT**

8    **A.    Legal Standard Governing This Motion**

9    Avvo urges the Court to impose a "heightened standard" here because this "lawsuit

10    directly implicates the First Amendment," relying on *Flowers v. Carville*, 310 F.3d 1118 (9th

11    Cir. 2002).  In *Flowers,* the Ninth Circuit discussed – but did not apply – a heightened standard

12    for cases in which plaintiffs seek "damages . . . for conduct which is prima facie protected by the

13    First Amendment."  *Id*. at 1130.  This is not such a case and Plaintiffs' claims here do not justify

14    a heightened standard.  Plaintiffs bring claims for violations of the Washington CPA – for

15    conduct and content not "prima facie protected by the First Amendment."  In language Avvo

16    ignores, *Flowers* questioned the breadth of the heightened standard, noting that no court had ever

17    applied it outside the *Noerr-Pennington* context.  *Id*. at 1131 n.8.  The Court found that Flower's

18    complaint satisfied both a higher and a lower standard and this did not resolve the breadth

19    question.

20    Avvo cites more than a dozen additional cases, implying that they too support a

21    heightened pleading standard for this case.  Def. Mot. at 7 n.7.  They do not help.  As Avvo

22    admitted in its motion, each of these cases held that "***defamation plaintiffs*** . . . must allege with

23    specificity the elements of their claims."  *Id*. at 7.  Like *Flowers*, there is no evidence that any of

---

24    [9] ¶ 25 (Wenokur credentials).  As a solo-practitioner bankruptcy lawyer, Plaintiff Wenokur practice depends

25    referrals from former clients and other lawyers.  ¶ 26.  He does not maintain a website for his law practice and there
       is minimal information available about him on the Internet.

26    [10] Avvo refused to add Mr. Wenokur's AV Martindale Hubbell rating to his Avvo profile – even though the
       information meets Avvo's publicly available information criterion – unless he "claimed his profile."  ¶ 27.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 8
Case No. CV 07 920 RSL

001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  these courts considered the standard they imposed any greater than that which would be required

2  of any litigant or any complaint.[11]  Even if they had, the fact that each case addresses the claims

3  of "defamation plaintiffs" distinguishes them from this case.

4      Even if a heightened standard were applied, however, Plaintiffs have met the pleadings

5  standard for all of their claims and adequately identified the precise Avvo acts or practices they

6  claim are unfair or deceptive.

**B.    This is a Consumer Protection Act Case – *Not* a Defamation Case – and Plaintiffs Have Properly Alleged All Elements of Their Consumer Protection Act Claims**

7

8

9      Avvo seeks dismissal of Plaintiffs' claims almost exclusively on First Amendment

10  grounds, only addressing Plaintiffs' CPA claims secondarily.  But this case *is* brought under

11  Washington's CPA to redress the harm caused by Avvo's unfair or deceptive conduct in using

12  arbitrary or even baseless attorney ratings to coerce information and cooperation from attorneys

13  and to inform consumers about the profile of lawyers.

**1.    Avvo does not dispute that Plaintiffs sufficiently pled two elements of their CPA claim**

14

15      Washington's CPA declares unlawful "unfair or deceptive acts or practices in the conduct

16  of any trade or commerce."  RCW 19.86.020.  The legislature intended courts to construe these

17  terms broadly.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778,

18  785, 719 P.2d 531 (1986).  To prevail in a private CPA action, a plaintiff must prove five

19  elements:  (i) unfair or deceptive act or practice; (ii) occurring in trade or commerce; (iii) public-

20  interest impact; (iv) injury to plaintiff in his or her business or property; and (v) causation.  *Id.* at

21  780.  *See also Stephens v. Omni Ins. Co.*, 159 P.3d 10, 14, 2007 Wn. App. Lexis 801 (April 23,

22  2007).  Plaintiffs have adequately pled all elements of their claims *and* identified the specific

23  conduct on which their claims are based.

24

25  _____

   [11] It is also significant that a number of the cases on which Avvo relies discuss the specificity required to avoid summary judgment and not the specificity required for a pre-discovery motion to dismiss.  Def. Mot. at 6-7.  *See, e.g., Harris v. City of Seattle*, 315 F. Supp. 2d 1112 (W.D. Wash. 2004) (after more than one year of discovery, plaintiff could not substantiate her claims), *aff'd*, 2005 U.S. App. Lexis 21543 (9th Cir. 2005).

26

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)  - 9
Case No. CV 07 920 RSL

001977-11 184033 V1

HB
HAGENS BERMAN
SOBOL SHAPIRO LLP

1    Avvo does not challenge the sufficiency of the Complaint's allegations of Avvo's unfair

2    or deceptive acts or practices. Wisely so. The complaint alleges both deceptive and unfair

3    conduct. *See supra* at II.A. & B. While Avvo does not even try to obtain accurate or complete

4    biographical information via its own investigation about the lawyers it rates or confirm what the

5    webcrawlers collect, it nonetheless represents to the public that its ratings are credible, unbiased

6    and mathematically precise and will help consumers make this right choice. ¶¶ 32-33. As a

7    result, Avvo's ratings routinely damage the reputations of countless attorneys because the site is

8    not capable of providing accurate or credible information. *See supra* at II.D.

9    Avvo allows attorneys to escape this *in terrorem* effect of its ratings: they can improve

10   their rating by "claiming their profile," accomplished by giving Avvo the lawyer's credit-card

11   and other personal information. Claiming a profile by submitting ***any*** biographical information –

12   however irrelevant to a lawyer's practice or competence – boosts a lawyer's Avvo rating. *See*

13   *supra* at II.B.4. Indeed, one lawyer boosted his Avvo Rating by supplying accurate information

14   about his two softball awards. ¶¶ 7, 46(h). Avvo thus uses its arbitrary and often-disparaging

15   public ratings to ***coerce*** attorneys to populate Avvo's website with their individual biographical

16   information (whether relevant or not), thereby relieving Avvo of the enormous cost of compiling

17   this information on its own. Avvo pejoratively characterizes Plaintiffs' allegations as nothing

18   more than lawyers "dismayed" or "unhappy" that Avvo has branded them with "ratings lower

19   than they think they deserve." *Id*. But such professional vanity is not the concern. Any lawyer

20   could manipulate his or her rating by self-reporting any biographical information – however

21   irrelevant – for an immediate rating boost. ¶¶ 7, 40. ***But why should they be compelled to do***

22   ***so?*** Avvo's cavalier characterization fails to account for the very grave consequences of its

23   unyielding insistence that lawyers help the fledgling company launch its ***for-profit*** enterprise by

24   volunteering personal biographical information – or be punished by a poor public rating. Most

25   lawyers do the very best they can to conduct themselves professionally and maintain their

26   professional reputations. Avvo exploits this for its own profit by extorting biographical

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)    - 10
Case No. CV 07 920 RSL

001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    information from lawyers.  This coercion is a part of the unfair conduct alleged in the complaint.

2    *See*, *e.g.*, ¶ 51.  In essence, Avvo says to every lawyer:  play our game by providing the

3    biographical data we need or we will smear your professional reputation.  In essence, Avvo is

4    engaging in reputation blackmail – with personal data as the coin.

5          Avvo also commits unfair and deceptive acts against Plaintiffs and the proposed Class by

6    reporting false information and refusing to correct that information when the truth is exposed.

7    Two examples of this practice are the reporting of experience levels of lawyers who have

8    practiced in one or more states not covered by Avvo and the failure to report disciplinary actions

9    taken against certain lawyers.  Because Avvo only reports a lawyer's experience at the bar for

10   the states it covers, it often grossly underreports the experience of profiled lawyers.  *See supra* at

11   II.B.2.  Avvo refuses to correct the incorrect information, thus allowing the false information to

12   stand – or coercing the affected lawyer to provide personal biographical information to Avvo to

13   correct the falsity.  ¶¶ 26-27.  In other instances, Avvo has failed to report serious disciplinary

14   actions against lawyers, disseminating the untrue impression that the lawyer has a clean record.

15   *See*, *e.g.*, ¶¶ 46(e)-(f).

16         In sum, by relying on coercion to obtain biographical information from attorneys for the

17   purpose of generating a credible attorney-rating system, and by publishing false or misleading

18   information about a lawyer's experience or competence, Avvo commits unfair and deceptive acts

19   against Plaintiffs and the proposed Class.  Avvo prudently does not dispute that this pleads the

20   first element of Plaintiffs' CPA claim, so Plaintiffs say no more about it. Nor does Avvo

21   challenge Plaintiffs' allegations that Avvo's conduct impacts the public interest.

22         Avvo instead seeks dismissal by contesting three CPA elements:  "occurring in trade or

23   commerce," injury and causation.  Def. Mot. at 15-19.

24         **2.      A commercial website is "trade or commerce"**

25         Washington courts have interpreted "trade or commerce" expansively.  "[O]ur Consumer

26   Protection Act applies to 'any' trade or commerce affecting the people of the state of

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)  - 11
Case No. CV 07 920 RSL

001977-11  184033 V1

HB

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    Washington, directly or indirectly…. It shows 'a carefully drafted attempt to bring within its

2    reaches *every* person who conducts unfair or deceptive acts or practices in *any* trade or

3    commerce.'" *Stephens*, 159 P.3d at 22 (quoting *Short v. Demopolis*, 103 Wn.2d 52, 61, 691 P.2d

4    163(1984) (emphasis in original).  A consumer relationship is neither a prerequisite for standing

5    nor a limitation on the definition of "trade or commerce."  *Id.  See also Washington State*

6    *Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 312, 858 P.2d 1054 (1993)

7    ("*Fisons*").  On this basis, Avvo's argument that the Plaintiffs can not maintain their action

8    because they have not "engaged in a commercial transaction" with Avvo must fall.

9         Avvo operates an internet-based business incorporated in Washington State.  ¶¶ 1, 32.  As

10   part of its business, Avvo actively encourages lawyers and law firms to buy advertising space on

11   the Avvo site.  Avvo seeks refuge in the "trade or commerce" language of RCW 19.86.020 and

12   the related definition in RCW 19.86.010(2) as "the sale of assets or services, and any commerce

13   directly or indirectly affecting the people of the state of Washington."  Def. Mot. at 15.  Avvo

14   says that because it "is not involved in any commercial transaction with these plaintiffs," it

15   cannot be held liable under the Act.  *Id.*  Avvo is wrong.  Avvo's relies on an unnecessarily

16   restrictive interpretation of "trade or commerce" and improper characterization of itself as a

17   provider of a "free" public service.  *Id.* at 16.  Avvo is not a "free," or not-for-profit, profile, as

18   Avvo implies.  *Id.* at 16.  Although neither consumers nor lawyers pay to access the site, Avvo

19   created and maintains the site for money.  *See supra* at II.A.  Avvo's ultimate goal is selling

20   advertising on the site.  *Id.*  From the site's debut, Avvo advertised to attorney visitors the chance

21   to pay to participate more fully – whatever their rating.[12]  Paid attorney advertisements dot the

22   website's pages.

23        Avvo secondarily seeks CPA immunity as a "media outlet."  Def. Mot. at 6.  Avvo asks

24   the Court to recognize it as a "member of the media."  Def. Mot. at 16.  Avvo contradicts its

25   argument two pages later when it invokes the protections of the Communications Decency Act of

26

---

[12] The advertising solicitation is quoted at ¶ 6 of the Berman Declaration.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)  - 12
Case No. CV 07 920 RSL

001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1996, 47 U.S.C. § 230 ("CDA"), which is available to "interactive computer services," but **not**

traditional media outlets such as the newspaper Avvo compares itself to in its motion.  Def. Mot.

at 19.  Avvo cannot have it both ways.  The CDA defines "interactive computer service" as "any

information service, system, or access software provider that provides or enables computer

access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  Congress, in enacting the

CDA, made a policy decision to distinguish between "interactive computer services" in

cyberspace and "the brick and mortar world."  *Batzel v. Smith*, 333 F.3d 1018, 1020 (9th Cir.

2003).[13]  Clearly, as Avvo admits elsewhere in its own motion, Avvo is an "interactive computer

service" and **not** part of the bricks-and-mortar world.  It cannot have the privileges of both

realms.[14]

Because Avvo is not a member of the media, the conduct and content on which Plaintiffs

base their claims cannot be news articles.  *Fidelity Mortgage Corp. v. Seattle Times Co.*, 131 Wn.

App. 462, 128 P.3d 621 (2005), is thus irrelevant.  In *Fidelity*, the Washington Court of Appeals

found that material published by the Seattle Times **in a print news article** could not be the basis

of a CPA cause of action because as a news article, it was not published "in the conduct of any

trade or commerce."  *Id.* at 468.  The court strictly limited its holding to news articles.  *Id.*[15]

### 3.    Plaintiffs and the Class have suffered direct harm from Avvo's conduct and adequately alleged that Avvo proximately caused their alleged injury

Avvo contends that "Plaintiffs have also suffered **no direct harm** from Avvo's

publication, and that "Plaintiffs have "failed to allege that Avvo proximately caused their alleged

---

[13] The specific provisions of section 230 of the CDA and their inapplicability to this case are discussed more fully *infra* at III.D.

[14] Avvo's reference to the definition of "news media" in the newly enacted Washington reporter's privilege statute is unconvincing.  Def. Mot. at 16 n.9.  There is no evidence the legislature intended the privilege to apply to internet websites whose "news" is unoriginal material harvested from other websites.  Under Avvo's extension of the definition, every law firm, corporation or other entity that maintains a website on which it posts news articles gathered from other websites would enjoy a reporter's privilege.  This and Avvo's other attempts to cast itself as "news media" or a "news outlet" raise factual rather than legal questions and suggest that the parties should proceed to discovery and the Complaint should be sustained.

[15] Furthermore, *Fidelity* reasoned that although a publisher would likely not be held liable under the CPA for the inaccuracies in content provided by others, it could be held liable for its own promotion of the accuracy of such information.  *Id.* at 470.  Here, if *Fidelity* applies at all, it extends to Avvo's promotion of its site as "unbiased" or "mathematical," including the information provided by others on its site and could actually **support** Avvo liability.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 13
Case No. CV 07 920 RSL

001977-11 184033 V1



1    injuries." Def. Mot. at 17.  In making this charge, Avvo ignores the Complaint's clear

2    allegations to the contrary. *Id*. at 17-19.  Plaintiffs allege that they have been injured in their

3    business and that Avvo's conduct caused that injury.  ¶ 9.  *See also* ¶¶ 67-75.  In addition to the

4    Class claims, Plaintiff Browne has brought his own individual CPA claim alleging that "[a]s a

5    direct result of Avvo's poor ratings of Plaintiff Browne, two of Plaintiff Browne's clients

6    terminated his representation of them and sought new counsel."  ¶ 24.  *See also* ¶¶ 76-85

7    (Plaintiff Browne's individual claim).

8        Avvo asserts the startling view that the "[s]ubject of an allegedly deceptive statement

9    generally lacks standing to sue under the CPA," citing just three cases in support.  None of the

10   cases stands for this proposition.  In *Blewett v. Abbott Labs.*, 86 Wn. App. 782, 938 P.2d 842

11   (1997), the Court of Appeals held that indirect purchasers lacked standing under the CPA, but

12   there is no similarities between that case and the one before the Court.

13       Next, *Association of Wash. Pub. Hosp. Dists. v. Phillip Morris, Inc.*, 241 F.3d 696 (9th

14   Cir. 2001), stands for the entirely different proposition that there is no CPA claim if the alleged

15   wrongdoing and injury are "too remote" to permit recovery under the CPA.  The Ninth Circuit

16   applied a three-factor test to determine if the alleged wrongdoing and injury are "too remote."

17   *Id*. at 701.  The Avvo Complaint passes that test.  First, there are no "more direct victims of the

18   alleged wrongful conduct who can be counted on to vindicate the law as private attorneys

19   general." *Id*.  The victims are the lawyers whose reputations have been damaged when they were

20   publicly branded with mediocre and low Avvo scores.[16]  Second, it will not be difficult to

21   ascertain the amount of Plaintiffs' damages attributable to defendants'.  Washington courts

22   recognize professional reputation damage and loss of good will are compensable damages under

23   ───────────────────────────

      [16] Here, for the second time Avvo makes contradictory arguments for its intellectual convenience.  Avvo
24   sidesteps the damage to the Plaintiffs' reputations when it argues that it is the **consumers** – and not the attorney
     plaintiffs – who are "the most direct victims of Avvo's misstatements" because it is "consumers who use the site in
     search of lawyers suffer the most direct harm." Def. Mot. at 17.  In the very next sentence, however, Avvo reverts
25   to arguing that the damages to the lawyers cannot be proved. *Id*. at 17-18.  Plaintiffs agree with Avvo – that
     consumers who use the site to search for lawyers **also** stand to be harmed by the false and misleading nature of the
     sites.  There are two groups of victims.  Those groups are not interchangible.  The consumers cannot bring claims
26   for damage to the lawyers' reputations and likewise, the lawyers have no standing to bring claims for the direct harm
     to consumers that Avvo acknowledges.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)  - 14
Case No. CV 07 920 RSL

001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

the CPA. *Fisons*, 122 Wn.2d at 316. Here, Plaintiffs on behalf of the Class seek injunctive relief only. Plaintiff Browne brings his own claim for loss of business. These are ascertainable damages. Third, "complicated damages to obviate the risk of multiple recoveries" will not be required if Plaintiffs are successful.

Avvo's reliance on *Fidelity Mortgage,* 131 Wn. App. 462, in this context is also misplaced. *Fidelity* affirmed dismissal of the case – ***on summary judgment*** – in part because the plaintiff had not demonstrated a causal link between the unfair and deceptive acts alleged and any ensuing injury. The plaintiff's case for causation fell short under the three-part Ninth Circuit test analyzed above. As discussed above, Plaintiffs here have pled causation adequately to overcome dismissal at this point.

Finally, contrary to Avvo's suggestion (Def. Mot. at 18-19), there is no prerequisite under the Washington CPA of a contractual relationship between the parties. The Washington Supreme Court confirmed this in *Fisons*, and earlier this year the Court of Appeals rejected the restrictive interpretation of *Fisons* that Avvo urges. *Stephens*, 159 P.3d at 29-30. In firm language, *Stephens* considered the same limitation on *Fisons* and construed it broadly:

> [T]he act simply does not require a consumer relationship as a prerequisite for standing. It does not identify the "consuming public" as the entity to be protected. "***Any person***" who is injured in his or her business or property by a violation of RCW 19.86.020 . . . may bring a civil action in the superior court.

*Id*. at 23 (quoting RCW 19.86.090) (emphasis in original). *See also Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., L.L.C.*, 134 Wn. App. 210, 219, 135 P.3d 499 (2006) ("[a]s a general rule, and as a matter of legislative intent, neither the CPA nor case law require privity of contract in order to bring a CPA claim alleging an unfair or deceptive act or practice"); *Northwest Airlines, Inc. v. Ticket Exch., Inc.*, 793 F. Supp. 976, 978-80 (W.D. Wash. 1992) (once Northwest Airlines established all *Hangman* elements, it did not need to prove it was a consumer).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)  - 15
Case No. CV 07 920 RSL

001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1

### 4.    The First Amendment does not preempt the CPA

2      Avvo seeks to evade liability by implying that the First Amendment bars Plaintiffs'

3  claims.  Def. Mot. at 13-14.  This is not the case.  To support its argument, Avvo repeatedly

4  mischaracterizes the Complaint by insisting that the gravamen of Plaintiffs' claims is the

5  "injurious falsehood of a statement."  *Id.* at 14.  But in truth, the gravamen of Plaintiffs' claims is

6  Avvo's unfair or deceptive conduct in coercing biographical information from attorneys to avoid

7  the expense and difficulty of compiling this information on its own and the publication of

8  deceptive and unreliable information while at the same time telling consumers that the

9  information is mathematically based and will thus help them make the "right choice."  *See* ¶¶ 32-

10  33, 51.

11      The mere fact that the unfair or deceptive conduct was carried out partly through written

12  words – namely, the coercive force of Avvo's arbitrary and often baseless ratings – via the

13  internet does not transform the acts into protected speech.  The United States Supreme Court has

14  recognized that "words can in some circumstances violate laws directed not against speech but

15  against conduct (a law against treason, for example, is violated by telling the enemy the Nation's

16  defense secrets)."  *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992).  *See also Wine and*

17  *Spirits Retailers, Inc. v. Rhode Island*, 364 F. Supp. 2d 172, 177 (D.R.I.) ("a statute that prohibits

18  certain types of conduct does not run afoul of the First Amendment simply because words may

19  be among the means used in furtherance of that conduct"), *aff'd*, 418 F.3d 36 (1st Cir. 2005).

20      Words are often a "means used in furtherance of" all different types of statutorily prohi-

21  bited conduct, among them treason, breaches of privacy laws, employment discrimination and

22  anti-competitive business practices, plus deceptive or unfair business practices such as those

23  before the Court.  The First Amendment does not abrogate the rights of the aggrieved to recover

24  under these laws just because, as here, speech is a component of the complained of conduct.

25      Tellingly, ***none*** of the cases Avvo cites holds that the First Amendment bars CPA claims.

26  Nor do their holdings support that result here.  In *Hustler Magazine v. Falwell*, 485 U.S. 46

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 16
Case No. CV 07 920 RSL

001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1   (1988), for example, the Supreme Court ruled that *public figure* Rev. Jerry Falwell could not

2   recover for *intentional infliction of emotional distress* where the *Hustler* ad that had allegedly

3   traumatized him was "not reasonably believable" and thus was protected speech.  *Id*. at 57.

4   These factors are not present there.  The plaintiffs and the Class bring claims based on conduct

5   that does not fall within the protections of the First Amendment.

6   **C.    Avvo's So-Called "Opinion" Content Does Not Meet the Standard for Protected**
        **Speech**

7

8            The centerpiece of Avvo's motion is the argument its rating system and the contents of its

9   website are "opinion" and thus "protected speech," cloaked in immunity by the First

10  Amendment.  But as discussed above, the Complaint seeks redress for Avvo's coercive *conduct*

11  toward Plaintiffs and the Class in operating its site *and* its deceptive conduct in publishing false

12  and/or unreliable and inaccurate information while at the same time representing that its site

13  content is "unbiased" and "mathematical."  And the mere fact that the conduct is carried out

14  through the use of words – as actionable schemes – does not transform the matter into a "speech"

15  case.  In addition, treating the case as solely a speech case would necessarily ignore the coercion

16  aspect of Avvo's business and the Plaintiffs' and the Class's claims.

17       **1.    "It's just the facts, so to speak."[17]**

18           As an initial matter, the issue of whether Avvo's conduct constitutes "opinion" requires a

19  factual inquiry improper on a motion to dismiss.  *McGlinchy v. Shell Chemical Co.*, 845 F.2d

20  802, 810 (9th Cir. 1988).  Here, the Complaint alleges conduct that no reasonable person could

21  construe as opinion – the development, dissemination and promotion of a rating system that is

22  described by its proponents as a "mathematical model," "unbiased" and showing no

23  "favoritism."[18]  "It's just the facts, so to speak."  Avvo's casting of its acts and practices as

24  "opinion" is a convenience for its motion to dismiss – one contrary to the representations

25  ───────────────
        [17] Complaint ¶ 55 (quoting Avvo website).

26      [18] A review of the website at the time of the filing of the complaint finds the use of the word opinion only once,
        buried in the site.  Berman Decl. ¶ 7.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 17
Case No. CV 07 920 RSL

001977-11  184033 V1

1    captured by the Complaint.  Digging further – as would be required to analyze more fully Avvo's

2    "protected speech" claim – would require the Court to evaluate prematurely the merits of the

3    case.

4            **2.    Avvo's conduct and content are not protected speech**

5            Avvo's conduct and content would not survive the "protected speech" scrutiny anyway.

6    Neither meet the standards for First Amendment protection.  They are not "protected speech"

7    under any theory and the defamation case law Avvo relies on does not absolve them from

8    liability.

9            As noted, Avvo's argument that its rating system is "opinion" is a litigation invention that

10   is at odds with the actual content of the site.  It is undisputed that Avvo has promoted the site as

11   "unbiased" and "mathematical" – neither concept suggests *opinion* and Avvo ignores entirely

12   how Plaintiffs' and the Class's claims concerning Avvo's coercive conduct could ever be

13   brought under the protections of the First Amendment.

14           Even if Avvo could convince the Court that this were a case about the company's

15   opinions, "[t]here is no absolute privilege for opinion." *Milkovich v. Lorain Journal Co.*, 497

16   U.S. 1, 17 (1990) (quoting *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 61 (2d Cir. 1980));

17   *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 871 (8th Cir. 2005)

18   (discussing *Milkovich*).  This is in part because "expressions of 'opinion' may often imply an

19   assertion of objective fact." *Milkovich*, 497 U.S. at 18.

20           Ignoring these authorities, Avvo instead opens its First Amendment argument with *dicta*

21   from *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).  Def. Mot. at 7.  Yet the Supreme Court

22   subsequently dismissed this *dicta* as the "opening salvo in all arguments for protection from

23   defamation actions on the ground of opinion, even though the case did not remotely concern the

24   question." *Milkovich*, 497 U.S. at 18 (quoting with approval *Cianci v New Times Publ'g Co.*,

25   639 F.2d 54, 61 (2d Cir. 1980)).  *Milkovich* rejected this interpretation:  "we do not think this

26   passage from *Gertz* was intended to create a wholesale defamation exemption for anything that

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 18
Case No. CV 07 920 RSL

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    might be labeled 'opinion.'"  *Id*.  Indeed, couching such statements in terms of opinion does not

2    dispel the false defamatory implications because a speaker may still imply a knowledge of facts

3    which lead to the defamatory conclusion.  *Id*.  *Partington v. Bugliosi*, 56 F.3d 1147, 1152-53 (9th

4    Cir. 1995) (quoting *Milkovich*).  *Milkovich* therefore held that, while the First Amendment

5    protects "pure" opinions, a statement that "may . . . imply a false assertion of fact" is actionable.

6    *Milkovich*, 497 U.S. at 19; *Partington*, 56 F.3d at 1153.[19]

7         The Court analyzed "whether a reasonable factfinder" could conclude that the coach lied.

8    *Id*. at 21.  The answer, the Court found, was "yes."  *Id*.  The Court found that this was true

9    because the language used was "not the source of loose, figurative, or hyperbolic language which

10   would negate the impression that the writer was seriously maintaining that petitioner committed

11   the crime of perjury.  Nor does the general tenor of the article negate this impression."  *Id*.

12   Moreover, the Court thought that "the connotation that petitioner committed perjury is

13   sufficiently factual to be susceptible of being proved true or false."  *Id*.

14        The *Milkovich* analysis, if it applied, would lead to the same result here.[20]  First, Avvo

15   publishes statements of purported fact that are false and/or deceptive.  ¶¶ 5-9, 13-16, 26-27, 33,

16   42.  *See supra* at II.B.2.  Avvo's motion ignores these statements, likely because there is no

17   possible basis to assert First Amendment protection for them.  As to its ratings, Avvo has

18   promoted their calculation and publication as a mathematical operation that is "unbiased."  There

19   is nothing in the "general tenor" of the ratings that would negate the impression that this was an

20   objective rating of a lawyer's abilities.  ¶¶ 5, 13, 15, 33, 51-52.  And, with Avvo's refusal to

---

22   [19] In *Milkovich*, the Supreme Court evaluated a newspaper article that had accused a high school wrestling
23   coach of lying under oath in a legal proceeding.  497 U.S. at 3-4.  The coach sued for defamation, alleging that the
     article accused him of committing perjury.  *Id*. at 6.  The appellate court affirmed summary judgment in favor of the
     newspaper on the grounds that the article was opinion.  *Id*. at 8.  The Supreme Court disagreed.  The court carefully
     reviewed the history of defamation at common law and in the United States and confirmed that in *Gertz*, 418 U.S.
24   323, it had never intended to create an absolute exception to defamation law for opinion.  *Milkovich*, 497 U.S. at 17-
     18.  The problem with such absolutism, the court pointed out is that it would be "contrary to the tenor and context of
25   the passage, but it would also ignore the fact that expressions of 'opinion' may often imply an assertion of objective
     fact."  *Id*. at 18.

26   [20] Plaintiffs strongly disagree with Avvo that their claims should be analyzed under defamation law.  Plaintiffs'
     analysis here is meant to demonstrate only that even if consideration of the claims under defamation law were
     proper, Avvo's conduct and content would not be protected.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)  - 19
Case No. CV 07 920 RSL

001977-11 184033 V1



1    disclose the basis of the rating, ¶ 6, comes the implication that what Avvo now calls its "opinion"

2    is based on objective fact knowable to Avvo based on undisclosed facts.  ¶¶ 13, 15, 32-34.

3          Avvo discusses three similar factors analyzed in *Partington*, 56 F.3d at 1153.  Def. Mot.

4    at 8-9.  Two of the three factors are addressed above:  here, the "general tenor" of the website

5    does not negate the impression that Avvo is asserting objective facts with its attorney ratings.

6    Plaintiffs' Complaint alleges many instances where Avvo has promoted the objectivity or mathe-

7    matical nature of its ratings.  *E.g.*, ¶¶ 6, 51-52.  As to the second factor, Avvo implies that it has

8    used "figurative or hyperbolic" language that negates any impression that it has asserted

9    objective fact, but cites no examples.  Avvo instead asserts that "readers ***normally*** do not expect

10   to find assertions of objective fact in ratings and reviews," and then cites a number of cases

11   involving "film reviews, restaurant ratings, and literary criticism."  Def. Mot. at 8-9 (emphasis

12   added).  But what consumers "***normally***" expect with respect to food and art reviews cannot

13   reasonably be compared to what they expect of Avvo's attorney ratings.  This is particularly true

14   in light of Avvo's encouragement of consumers to rely on its "unbiased" mathematical model.[21]

15         For the third factor, Avvo argues that it has "outline[d] the factual basis for [its] conclu-

16   sion," and thus should be granted constitutional protection.  Def. Mot. at 10.  To the contrary,

17   however, the Complaint alleges that Avvo does ***not*** disclose the bases for its ratings and has

18   actually gone out of its way to protect the proprietary "mathematical model" on which they are

19   based.  ¶¶ 6, 15, 37-38, 44.  Unlike the full-length book at issue in *Partington*, which discussed a

20   multitude of factors that contributed to the author's conclusion that a lawyer performed poorly at

21   trial, here Avvo has been coy about revealing what is behind its electronic curtain – or its ratings

22   – other than to say that consumers should accept Avvo's representations that they are

23   "mathematical" and "unbiased."  As such, there is no justification for offering Avvo

24   constitutional protection.

25

26         [21] Significantly, the cases Avvo relies on find reviews and ratings "protected opinion" under circumstances
extremely different from those before the Court in this case.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)  - 20
Case No. CV 07 920 RSL

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    Moreover, *Partington* does not stand for the proposition that lawyer "ratings and reviews

2 are the classic context for opinions," as Avvo implies.  Def. Mot. at 10-11.  In fact, the Ninth

3 Circuit expressly limited its holding to "criticisms of a lawyers' performance in a specific trial"

4 and affirmed that "we do not consider here whether criticisms that suggest that a lawyer has

5 committed a serious ethical breach or that a lawyer lacks the professional qualifications

6 necessary to practice are protected by the First Amendment."  *Partington*, 56 F.3d at 1158 n.15.[22]

7    Avvo further argues that Plaintiffs may not pursue their claims because they cannot offer

8 any statements by Avvo that may be proved true or false.  This, of course, ignores Avvo's false

9 statements about lawyers' years of experience or practice areas that Plaintiffs have already

10 discussed.  *See supra* at II.2, ¶ 46.

11    Avvo's primary authority, *Aviation Charter, Inc. v. Aviation Research Group/US*, 416

12 F.3d 864 (8th Cir. 2005), is distinguishable.  First, it was on summary judgment that *Aviation*

13 *Charter* found that an aviation-charter-service rating system was protected opinion.  Second,

14 Avvo ignores the court's discussion of the plaintiff's deceptive trade practices act ("DTPA")

15 claim, *id.* at 871-72, which did not encompass the defamation analysis that Avvo highlights.

16 Third, the challenged practice in *Aviation Charter* did not include allegations, present here, that

17 the defendant used baseless ratings derived from a cursory investigation to *coerce* additional

18 information from the rated companies in order to enhance the website's product and, hence,

19 value to advertisers.

20    Fourth, the rating system materially differed from the Avvo rating system:  the defendant

21 there conducted meaningful investigations into the safety records of individual aviation com-

22 panies, then relied on three safety experts to make independent judgments based on robust

23

24    [22] The same is also true for every other case Avvo cites for the proposition that courts routinely allow

25 "statements about the ability of professionals, and attorneys in particular" as opinions.  Def. Mot. at 10-11.  In those
cases, the courts considered hyperbole and other statements indisputably opinion.  Certainly few, if any, would
confuse the term "creepazoid attorney," or adjectives such as "crude," "ugly," "pernicious," and "breathtaking in its

26 daring," to describe "facts."  *E.g.*, *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1403 (Cal. App. 1999); *Liberty
Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1300 (D.C. Cir. 1988).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 21
Case No. CV 07 920 RSL

001977-11  184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  information from the investigations.[23]  *Id*. at 866-67, 870-81.  These experts evaluated a prelimi-

2  nary, computer-generated score for each aviation company, and employing what was "ultimately

3  a subjective assessment," could substitute their conclusions for that preliminary score.  *Id*. at 870.

4  This produced a "subjective interpretation . . . leading to a subjective conclusion" that was not

5  susceptible to verification, and thus constituted protected opinion.  *Id*. at 871.  Here, however,

6  there are no Avvo experts applying their subjective judgment to Avvo's computer-generated,

7  "mathematical model"-based ratings.  Rather, the computer-generated ratings are the final

8  product.  Avvo's software is thus only a conduit for generating ratings based on inconsistent and

9  often inadequate amounts of information about each lawyer – quite unlike the *Aviation Charter*

10  rating system.  *See*, *e.g.*, ¶¶ 40-44, 46.  *Aviation Charter* thus does not indicate that Avvo's

11  ratings are protected opinion.

12          Consistent with Avvo's avoidance of Plaintiffs' actual claims, Avvo cites dozens of

13  decisions addressing First Amendment issues, but cites only one for its CPA analysis.  See Def.

14  Mot. at 9 n.5, 13-14.  Yet even that authority, *Presidio Enters., Inc. v. Warner Bros. Distrib.*

15  *Corp.*, 784 F.2d 674 (5th Cir. 1986), does not help Avvo.  *Presidio* involved a movie theater's

16  Texas DTPA claim against a film distributor alleging deceptive promotion of a movie.  The

17  distributor promoted the film ("*The Swarm*"), which later flopped, as the "your blockbuster for

18  the summer of '78," "the greatest adventure-survival movie of all time" and similar such

19  hyperbole.  *Id*. at 676-77.  Under the Texas DTPA, misrepresentations can be actionable only "so

20  long as they are of a material fact and not merely 'puffing' or opinion. . . ."  *Id*. at 686 (quoting

21  *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex. 1980)).  Representations of "quality" or

22  "grade" of "goods or services" can be actionable where they can be tied to a "measure of

23  degree."  *Id*. (quoting *Pennington*, at 687).  While Warner Brothers' movie promotional

24

25

26    _____
   [23] The information was publicly available, *id*. at 866, but because it concerned safety records of the highly
   regulated aviation-charter industry, the defendant was able to search focused databases and obtain far richer
   information than was available to Avvo via its web-wide searches.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)  - 22
Case No. CV 07 920 RSL



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  hyperbole plainly did not meet this standard, Avvo itself represented that its ratings, generated by

2  computer based solely on a mathematical model, did exactly this.

3       Further, as discussed, Avvo's focus on ***content*** ignores that Plaintiffs allege that Avvo's

4  conduct in operating the site in such a way coerces lawyers to provide personal biographical

5  information in exchange for a good rating.  *See*, *e.g.*, ¶ 51.

6  **D.    Plaintiffs Do Not Assert Liability for Republishing Content From Third Parties**

7       Asserting immunity under several guises, Avvo claims to be blameless for merely

8  republishing content drafted by third parties.  It is irrelevant whether Avvo can be liable for

9  innocently republishing third-party content on its website.  To the extent Plaintiffs assert CPA

10  liability based on published content, it is for content that Avvo created.

11       **1.    Communications Decency Act § 230 does not immunize Avvo from liability
            for its ratings and other website conduct it provides**

12

13       Avvo vaguely sweeps all Avvo content into its broad argument that Section 230 of the

   Communications Decency Act, 47 U.S.C. § 230, bars liability for the "posting" of third-party
14
   content.  Def. Mot. at 19.  By doing so, Avvo dodges the issue of content it developed or shaped.
15

16       ***Section 230 immunizes content created by third parties***.  The immunity does not extend

   to content the interactive computer service provides.[24]  The Ninth Circuit recently interpreted the
17
   CDA in *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 2007 U.S. App.
18
   Lexis 11350 (9th Cir. May 23, 2007), explaining § 230's liability dichotomy for interactive
19
   computer services:
20

21            If Roommates passively publishes information provided by others,
              the CDA protects it from liability that would otherwise attach
22            under state or federal law as a result of such publication.  But if it
              is responsible in whole or in part, for creating or developing the
23            information, it becomes a content provider and is not entitled to
              CDA immunity.  [2007 U.S. App. Lexis 11350, at *5.]
24

25

26    [24] Avvo identifies itself alternately as a "member of the media," Def. Mot. at 16, and an "interactive computer
   service."  *Id*. at 19.  As discussed above, it cannot be both.  *See supra* at III.B.2.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 23
Case No. CV 07 920 RSL

001977-11  184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  Had Avvo limited itself merely to republishing publicly available information such as state bar-

2  association records or posting of content provided by third parties such as consumers or other

3  lawyers without filter or interpretation, § 230 might apply.

4          This lawsuit, however, does not challenge such republishing.  Section 230 does not apply

5  to Avvo-created content, including Avvo Ratings or Avvo's promotion of the ratings as based on

6  a "mathematical model," "unbiased," and free of "favoritism."  The ratings, Avvo acknowledges,

7  are based on a "proprietary model" – *i.e.*, one not available to the public at large.  ¶¶ 5-6.  Avvo

8  calculates its ratings internally, based on a formula it does not disclose.  *Id*.  Avvo does also not

9  disclose the precise factors it considers or the weight assigned to each of the factors; that too is

10  proprietary.  *Id*.  No information is given regarding the identity of the websites Avvo

11  incorporates into its calculations.  *Id*.

12          **2.      While republishing disciplinary actions by the Washington State Bar
                    Association may be protected, Avvo's misleading characterizations of the**
13          **disciplinary proceedings are not**

14          Avvo's final argument is similarly misplaced.  Avvo argues that republishing Washington

15  State Bar Association Disciplinary actions constitutes protected First Amendment speech.  Def.

16  Mot. at 21-22.  But for good reason Avvo's argument lacks any reference to allegations raising

17  this issue.  Plaintiffs do not challenge the accurate republication of publicly available informa-

18  tion, including bar-association disciplinary actions.[25]  But Avvo has gone beyond republication

19  of disciplinary records and provides its own descriptions of the nature of attorney discipline and

20  assigns its own undisclosed weight to the discipline that bears no known relationship to the

21  weight assigned by the bar association.  There is no authority to extend any First Amendment

22  protection for republication to the misleading, unfair or deceptive use of the information in Avvo

23  ratings or characterizations.  ¶ 46(d).

24

25

26  _____
    [25] Plaintiffs do not necessarily agree with Avvo's First Amendment analysis.  It seems more defensible under
    these circumstances to argue that accurate republication would be protected by § 230, but because the Complaint
    does not allege that Avvo is barred from such republications, the issue is not properly before the Court.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 24
Case No. CV 07 920 RSL

001977-11 184033 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1     Avvo also arbitrarily treats other lawyers with more seriously disciplinary sanctions more

2 generously – rating lawyers who have been disbarred or died more highly than Browne and other

3 qualified lawyers.  *E.g.*, ¶¶ 11 (disbarment treated more favorably),[26] 46(d) (suspension treated

4 more favorably), 46(f) (federal conviction treated more favorably).  All of this takes place

5 despite Avvo's assurances that "*[t]here's no favoritism*.  Here at Avvo, all lawyers are treated

6 equally.  They can't pay to change their scores, and we don't play favorites to lawyers we know.

7 It's just the facts, so to speak."  ¶ 55 (emphasis supplied by website).

8 **E.     Plaintiffs Should be Granted Leave to Amend**

9     If the Court is inclined to grant Avvo's motion, Plaintiffs respectfully request leave to

10 amend their complaint.[27]

11                          **IV.     CONCLUSION**

12     For the reasons set forth above, the Court should deny Defendants' motion for judgment

13 on the pleadings.

14 DATED:  July 30, 2007

15                          HAGENS BERMAN SOBOL SHAPIRO LLP

16

17                          By      **/s/ Steve W. Berman**
                                 Steve W. Berman, WSBA #12536
18                                steve@hbsslaw.com
                                 Erin Flory, WSBA # 166331
19                                erin@hbsslaw.com
                                 Jeniphr A.E. Breckenridge, WSBA #21410
20                                jeniphr@hbsslaw.com
21                               1301 Fifth Avenue, Suite 2900
                                 Seattle, WA 98101
22                               Telephone:  (206) 623-7292
                                 Facsimile:  (206) 623-0594
23

24                               Attorneys for Plaintiffs

25     [26] Dozens of additional examples have come to light since the Complaint was filed.  *See*, *e.g.*, Berman Decl. at ¶ 9.

26     [27] Some of the material to be incorporated if an amendment is necessary is attached to the Berman Decl.  *See* ¶¶ 8-11.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)  - 25
Case No. CV 07 920 RSL

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on July 30, 2007, I electronically filed the foregoing with the Clerk

3    of the Court using the CM/ECF system which will send notification of such filing to the

4    following:

5          Bruce E.H. Johnson – brucejohnson@dwt.com

6          Stephen M. Rummage – steverummage@dwt.com

7    DATED:  July 30, 2007

8                                    HAGENS BERMAN SOBOL SHAPIRO LLP

9

10                           By _____/s/ Steve W. Berman_____

11                                Steve W. Berman, WSBA #12536
                                  steve@hbsslaw.com
12                                Erin Flory, WSBA #16631
                                  erin@hbsslaw.com
13                                Jeniphr A.E. Breckenridge, WSBA #21410
                                  jeniphr@hbsslaw.com
14                              1301 Fifth Avenue, Suite 2900

15                              Seattle, WA 98101
                                Telephone:  (206) 623-7292
16                              Facsimile:  (206) 623-0594

17                              Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CLASS
ACTION COMPLAINT UNDER FED. R. CIV. P. 12(C)   - 26
Case No. CV 07 920 RSL

