1
2
3
4
5
6   UNITED STATES DISTRICT COURT
    WESTERN DISTRICT OF WASHINGTON
7   AT SEATTLE

8   _____
                                            )
9   JOHN HENRY BROWNE, *et al.*,            )
                                            )   Case No. C07-0920RSL
                     Plaintiffs,            )
10          v.                              )
                                            )   ORDER GRANTING DEFENDANTS'
11  AVVO, INC., *et al.*,                   )   MOTION TO DISMISS
                                            )
12                   Defendants.            )
    _____)
13

14         This matter comes before the Court on "Defendants' Motion to Dismiss Class

15  Action Complaint Under Fed. R. Civ. P. 12(c)." Dkt. # 6. Plaintiffs John Henry Browne and

16  Alan J. Wenokur claim that defendants' website, on which information about attorneys and a

17  comparative rating system appears, violates the Washington Consumer Protection Act. Plaintiffs

18  seek injunctive relief against defendants: plaintiff Browne also has an individual claim seeking

19  an award of monetary damages. Defendants argue that the complaint should be dismissed

20  because: (1) the allegations of the complaint are not pled with the required specificity;

21  (2) defendants' rating system and the republication of public records are protected by the First

22  Amendment and cannot be the basis of a state law claim; (3) plaintiffs' Consumer Protection Act

23  claim fails as a matter of law; and (4) the Communications Decency Act bars liability for posting

24  third-party content.

25
26
ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

Where, as here, a motion under Fed. R. Civ. P. 12(c) is used to raise the defense of failure to state a claim, the Court's review is the same as it would have been had the motion been filed under Fed. R. Civ. P. 12(b)(6). McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). Although the Court's review is generally limited to the contents of the complaint (Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996)), Ninth Circuit authority allows the Court to consider documents referenced extensively in the complaint, documents that form the basis of plaintiffs' claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted (United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003)). The archived screen shots of pages from Avvo's mid-June 2007 website and the Washington State Bar Association records submitted by the parties appear to fall within one or more of these categories. For purposes of this motion, therefore, the allegations of the complaint and the documents submitted will be accepted as true and construed in the light most favorable to plaintiffs. LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000).

**A. PLEADING STANDARD**

Defendants argue that the complaint in this matter fails to satisfy the heightened pleading standards set forth in Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (May 21, 2007), and Flowers v. Carville, 310 F.3d 1118, 1130 (9th Cir. 2002). Motion at 6-7. Because defendants have made no attempt to identify any particular deficiency in plaintiffs' allegations, the Court need not divine the Supreme Court's intent in Twombly or determine whether a special pleading standard applies to a Consumer Protection Act claim based on protected speech. The complaint identifies the statements alleged to be unlawful, how and when they were made, and the type of damage caused. The factual allegations adequately state the grounds upon which plaintiffs' claim rests and provide enough information for the Court to determine whether those claims are legally sufficient. Absent some assistance from defendants

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                       -2-

in identifying a claim that is based on nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" (Twombly, 127 S. Ct. at 1964-65), the Court finds that plaintiffs' complaint satisfies the various pleading standards that may apply under Twombly and/or Flowers.

## B. FIRST AMENDMENT

Plaintiffs' primary challenge is to the accuracy and validity of the numerical rating system used by Avvo to compare attorneys. Defendants assert that the opinions expressed through the rating system, (*i.e.*, that attorney X is a 3.5 and/or that an attorney with a higher rating is better able to handle a particular case than an attorney with a lower rating), are absolutely protected by the First Amendment and cannot serve as the basis for liability under state law. The Court agrees. The key issue is whether the challenged statement could "reasonably have been interpreted as stating actual facts" about plaintiff. Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50 (1988). In making this determination, the Court is to consider the work as a whole, including the context in which the statements were made. Using the standards set forth in Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990), the Ninth Circuit has developed a three-part test for determining whether a reasonable factfinder could conclude that the offending statement implies an assertion of objective fact: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." Partington v. Bugliosi, 56 F.3d 1147, 1153 (9th Cir. 1995) (citing Unelko Corp. v. Rooney, 912 F.2d 1049, 1053 (9th Cir. 1990)).

Avvo's website contains numerous reminders that the Avvo rating system is subjective. The ratings are described as an "assessment" or "judgment," two words that imply some sort of evaluative process. The underlying data is weighted based on Avvo's subjective

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                -3-

opinions regarding the relative importance of various attributes, such as experience, disciplinary proceedings, client evaluations, and self-promotion.  How an attribute is scored and how it is weighed in comparison with other attributes is not disclosed, but a reasonable person would understand that two people looking at the same underlying data could come up with vastly different ratings depending on their subjective views of what is relevant and what is important.  A potential client would expect that a system designed to rate the professional abilities of attorneys would incorporate the expertise and reflect the subjective opinions of the reviewer: the website even says as much.  Neither the nature of the information provided nor the language used on the website would lead a reasonable person to believe that the ratings are a statement of actual fact.

This conclusion is bolstered by the fact that the Avvo rating system is an abstraction.  A certain level of experience, for example, is assigned a value which is then crunched with the values assigned to the attorney's disciplinary history, references, awards, *etc*.  The product of this calculation is a number between one and ten, which consumers are invited to use to compare attorneys in the same field.  No reasonable consumer would believe that Avvo is asserting that plaintiff Browne is a "5.5."  The rating is figurative:  it represents in an abstracted form some panoply of attributes and the values Avvo has assigned them.  A user of the Avvo site would understand that "5.5" is not a statement of fact.  To the extent the numbers are tied to fuzzy descriptive phrases like "superb," "good," and "strong caution," a reasonable reader would understand that these phrases and their application to a particular attorney are subjective and, as discussed below, not sufficiently factual to be proved or disproved.

The last part of the Partington test is "whether the statement in question is susceptible of being proved true or false."  Plaintiffs challenge the accuracy of the ratings in the abstract (plaintiff Browne maintains that he is not a 5.5 or otherwise "average") as well as the implied comparison between attorneys (plaintiffs assert that Supreme Court Justice Ruth Bader

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                                  -4-

Ginsburg should not have a lower rating than Avvo's Chief Executive Officer). Defendants' decision to assign plaintiff Browne a rating of 5.5 is debatable: one could argue, for example, that Browne's thirty-five years of experience raise him above the "average." Nevertheless, defendants' rating is not only defensible, it is virtually impossible to prove wrong. Defendants fairly describe the nature of the information on which Avvo's ratings are based and make it clear that (a) there may be other relevant data that the rating does not consider and (b) the conversion of the available information into a number involves judgment, interpretation, and assessment. It is apparently defendants' view that a relatively recent admonition by the state disciplinary authority weighs heavily against Browne's experience and a generic attorney endorsement. One may disagree with defendants' evaluation of the underlying objective facts, but the rating itself cannot be proved true or false.[1] The comparison of two ratings may provide additional fodder for the debate, but even surprising results like the fact that a Supreme Court Justice had a lower rating than defendant Britton do not prove that the ratings are true or false. Consumers and the attorneys profiled have access to the underlying information and, while they may disagree with a particular rating and/or the implied comparisons drawn therefrom, "[t]here is no objective standard by which one can measure an advocate's abilities with any certitude or determine

---

[1] Ratings and reviews are, by their very nature, subjective and debatable. See Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 870 (8th Cir. 2005) (noting that although defendant's critique of plaintiff "relies in part on objectively verifiable data, the interpretation of those data was ultimately a subjective assessment, not an objectively verifiable fact"). Comparisons and comparative ratings are often based as much on the biases of the reviewer as on the merits of the reviewed: they should, therefore, be relied upon with caution. For example, in 2006, a new magazine called Lawdragon purported to identify the 500 leading judges in the United States. The undersigned was chosen to be one of the privileged 500 and was described as follows: "Seattle's judicial star cites Bob Dylan in opinions while providing contraceptives and protecting orca whales." The Leading Judges in America, Lawdragon, Winter 2006, at 72. What can one say about such nonsense? As my parents would tell me when I informed them of some of my amazing achievements as a child in Staten Island, NY, "that and five cents will get you a ride on the ferry."

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -5-

conclusively the truth or falsity of [Avvo's] statements . . . ." Partington, 56 F.3d at 1158.[2]

Rather than seeing the Avvo ratings for what they are – "that and $1.50 will get you a ride on Seattle's new South Lake Union Streetcar" – plaintiffs Browne and Wenokur want to make a federal case out of the number assigned to them because (a) it could harm their reputation, (b) it could cost them customers/fees, or (c) it could mislead the lawyer-hiring public into retaining poor lawyers or bypassing better lawyers. To the extent that their lawsuit has focused a spotlight on how ludicrous the rating of attorneys (and judges) has become, more power to them. To the extent that they seek to prevent the dissemination of opinions regarding attorneys and judges, however, the First Amendment precludes their cause of action. In apparent recognition of the fact that Avvo's rating system is protected speech under the First Amendment, plaintiffs' responsive memorandum highlights three other practices which are said to violate the Washington Consumer Protection Act. Plaintiffs challenge the truthfulness of defendants' assertion that the rating system is unbiased, the accuracy of some of the data included in the attorney profiles,[3] and defendants' overall business model because it forces attorneys to provide biographical information in order to avoid a poor rating. The merits of

---

[2] Ironically, plaintiff Browne relies on his designation as a "Super Lawyer" by Washington Law & Politics magazine as evidence that he could not possibly deserve an "average" rating from Avvo. Why one should assume that the attorney rating system developed by Washington Law & Politics is any better than that used by Avvo is not specified, and the Court is not inclined to make such an assumption. In 2004, the undersigned imposed sanctions of almost $40,000 against another supposedly "Super Lawyer" for engaging in unreasonable and vexatious litigation tactics. In its opinion affirming the decision, the Ninth Circuit said, "[t]he record supports the district court's finding that [this Super Lawyer] knowingly pursued frivolous claims and engaged in obfuscatory litigation tactics." Athearn v. Alaska Airlines, Inc., No. 03-35140, 2004 WL 2726045, at *2 (Dec. 1, 2004). Nothwithstanding the fact that impartial decision-makers had recently found her conduct sanctionable, this counsel was re-elected a "Super Lawyer" in 2005 for the third year in a row.

[3] Defendants' argument regarding its right to republish information obtained from state bar associations misses the mark. Plaintiffs are not challenging defendants' right to reprint public records or the disclosure of any particular disciplinary action. Rather, plaintiffs argue that some of the information disclosed does not accurately reflect the underlying bar association records and is therefore inaccurate.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                              -6-

plaintiffs' Consumer Protection Act claim are discussed below.

### C. CONSUMER PROTECTION ACT

The Washington Consumer Protection Act ("CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). Defendants argue that plaintiffs are unable to satisfy the second and fourth elements of their CPA claim.

"Trade" and "commerce" are defined as "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). Avvo collects data from public sources, attorneys, and references, rates attorneys (where appropriate), and provides both the underlying data and the ratings to consumers free of charge. No assets or services are sold to people who visit the site in the hopes of finding a lawyer and no charge is levied against attorneys or references who choose to provide information. It is hard to imagine how an information clearinghouse and/or ratings service could be considered "commerce," and plaintiffs have offered no theory on this point.

Instead, plaintiffs argue that Avvo's offer to sell advertising space to attorneys transforms all of defendants' activities into trade or commerce. The advertising program is separate and distinct from the attorney profiles that are the subject of plaintiffs' complaint. Plaintiffs have not alleged any misstatements of fact or unfair methods of competition involving the advertising program and cannot simply assume that since some of defendants' actions are entrepreneurial, all of them are. In Fidelity Mortgage Corp. v. Seattle Times Co., 131 Wn. App. 462, 470 (2005), the court found that a newspaper's publication of mortgage rates from various lenders was not, in the absence of payment from the lenders, trade or commerce. On the other

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                -7-

hand, the same rate chart could be considered trade or commerce if the newspaper accepted an advertising fee in exchange for including a lender in the chart.  As plaintiffs' allege in their complaint and acknowledge in their response, defendants do not accept payment for the inclusion of an attorney on Avvo's website and neither attorneys nor consumers pay to access the site.  Avvo's publication of information and ratings based on available data is not "trade or commerce" and cannot form the basis of a CPA claim.

In addition, most, if not all, of the damages asserted in this case are either too remote to be recoverable or are not cognizable under the CPA.  Private citizens can utilize the CPA to protect the public interest if defendant, by unfair or deceptive acts or practices, has induced plaintiff to act or refrain from acting.  Fidelity Mortgage, 131 Wn. App. at 468-69 (citing Anhold v. Daniels, 94 Wn.2d 40, 46 (1980)).  Except as noted below, Avvo did not induce plaintiffs to act or refrain from acting.  Plaintiff Browne's damage claim is based on his assertion that third-party consumers of legal services were misled by the information and ratings provided by Avvo.  To the extent that some of these consumers may have refrained from hiring, or may even have fired, plaintiff Browne based on his attorney profile, he seeks damages associated with lost fees.

Despite the fact that a causal link can be alleged, a claim for damages will fail if the damages are too remote from the asserted cause.  Washington courts have adopted the Ninth Circuit's test for remoteness:

> (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

Fidelity Mortgage, 131 Wn. App. at 470-71 (quoting Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc., 241 F.3d 696, 701 (9th Cir. 2001)).  All three evaluative criteria suggest that the damages claimed by plaintiff Browne are so remote that they were not proximately caused by

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                             -8-

defendants' publication of the offending attorney profiles. Consumers who were misled by the information and ratings provided by Avvo are the direct victims of the alleged wrongdoing. If, for example, a consumer hired a disbarred (and unethical) attorney based on inaccurate information generated by Avvo, the consumer would be in the best position to seek redress for payments made to the attorney and/or any losses resulting from the attorney's inability to provide legal services. Allowing attorneys who were not hired by consumers to seek damages would add unnecessary complexities to the claim. Identifying consumers who went elsewhere, determining what, if any, role Avvo's website played in their decision to hire another attorney, and establishing that the consumer was in fact injured would be incredibly difficult. Even if one were able to identify such a consumer, calculating plaintiffs' expected revenues from the "lost" client would be speculative at best. Finally, apportioning damages between Avvo and the providers of incorrect data and/or competing attorneys who "game" the system would be very complex. The damages alleged by plaintiff Browne are simply too remote to be proximately caused by defendants' conduct.[4]

## C. COMMUNICATIONS DECENCY ACT

Defendant argues that Section 230 of the Communications Decency Act bars liability for posting third-party content. Plaintiffs have disavowed any claim based on content that Avvo obtained from a third-party (Response at 23) and the Court need not consider this defense further.

---

[4] To the extent plaintiffs' complaint challenges defendants' overall business model, it could be argued that defendants induced plaintiffs to act (*i.e.*, to provide biographical information) in order to avoid a poor rating. Plaintiffs have not, however, alleged that inputting data on Avvo's website has in any way injured them or caused damage cognizable under the CPA: plaintiffs' claims regarding defendants' business model must, therefore, fail.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                -9-

For all of the foregoing reasons, defendants' motion to dismiss is GRANTED. Plaintiffs' claim that the Avvo rating system is inaccurate and misleading is barred by the First Amendment. The various challenges highlighted in plaintiffs' responsive memorandum (namely, that defendants mischaracterized the rating system, that some of the data included in the attorney profiles is inaccurate, and that defendants' overall business model is coercive) do not state a cause of action under the Consumer Protection Act. Because no amendment of the complaint could cure the deficiencies identified above, plaintiffs' request for leave to amend is DENIED.

Dated this 18th day of December, 2007.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                -10-